**Fannie Mae WILLIAMS, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.01–M–290–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 6, 2002.

Mickie Beth Stiller of Law Offices of Micki Beth Stiller, Montgomery, AL, for Plaintiff.

R. Randolph Neeley, United States Attorney's Office Montgomery, AL, for Defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), the claimant, Fannie Mae Williams, brings this action to review a final decision by the Commissioner (Doc. # 1). The Commissioner denied the claimant's claim for Sup-

plement Security Income ["SSI"] and Disability benefits (Doc. # 2). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be REVERSED and REMANDED.

## I. PROCEDURAL BACKGROUND AND FACTS

The claimant was born on 29 September 1946 and was 52 years old at the time of the administrative hearing (R. 41). The claimant has a high school education (R. 20), and her past relevant work experience includes work as a cook's helper, dishwasher, laundry worker, and bench worker (R. 60). She alleges a disability onset date of 29 May 1997 (R. 86). In her disability report, the claimant stated that her ability to work was limited by sleep apnea, fluid in her lungs, diabetes, rheumatoid arthritis, shortness of breath, a lack of oxygen to her heart, and dizziness (R. 137). She testified that she is unable to work because of back pain caused by those symptoms and impairments (R.50–56).

On 13 June 1997, the claimant filed two applications under the Social Security Act: 1) an application for Disability Benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. (R. 86–88); and 2) an application for Supplemental Security income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq., (R. 421–423). These applications were denied initially and upon reconsideration (R. 68–70, 78–79, 424–429, 431–433).

Following an administrative hearing, the Administrative Law Judge ["ALJ"] denied the claimant's request for benefits in a decision dated 29 October 1999 (R. 25–37). On 2 February 2001, the Appeals Council denied the claimant's request for review (R. 7–8). Therefore, the hearing decision became the final decision of the Commis-

sioner of Social Security. On 9 March 2001, the claimant filed the instant action (Doc. # 1).

## II. STANDARD OF REVIEW

■ The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). This court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater*, 84 F.3d at 1400 (citations omitted).

## III. DISCUSSION

### A. Standard for Determining Disability

■ An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must also evaluate the claimant's case using this sequential evaluation process. *Ambers v. Heckler*, 736 F.2d 1467, 1469 (11th Cir.1984).

■ First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant's condition or impairment must be deemed "severe."[2] Third, it must be determined whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant is conclusively presumed to be disabled based on his or her medical condition.

If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the fourth step, namely, an assessment of the claimant's residual functional capacity ["RFC"]. The assessment measures whether a claimant can perform past relevant work despite his or her impairment. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether, in light of his or her RFC, age, education and work experience, the claimant can perform other work. §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

### B. The ALJ's Findings

Within the structure of the sequential evaluation process, the ALJ made the following findings:

1. In *Graham v. Apfel*, 129 F.3d at 1422, the Court of Appeals has stated that:

   Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See*

   *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

2. The condition is severe if it significantly limits claimant's physical or mental ability to do basic work activities. §§ 20 C.F.R. 404.1520(c), 416.920(c).

A. The claimant met the disability insured status requirements of the Act as of the alleged onset date (R. 33).

B. The claimant has not engaged in substantial gainful activity ["SGA"] [3] since the alleged onset date (R. 33).

C. The claimant has "severe" impairments, including arthritis of the back and insulin-dependent diabetes mellitus. She also has non-severe impairments consisting of dysthymia disorder, sleep apnea, and hypertension (R. 33).

D. The claimant's impairments, considered individually or in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 33).

E. The claimant's allegations of pain and functional limitations are not credible (R. 33).

F. The claimant retains the residual functional capacity to work at the medium level of exertion (R. 33).

G. The claimant can perform past relevant work (R. 33).

As a result of his evaluation, the ALJ concluded that the claimant did not have a "disability," as defined in the Act, at any time through the date of his decision, and that she was therefore ineligible for any

benefits under sections 216(i) and 223 of the Act or sections 1602 and 1614(a)(3)(A) (R. 34).

## C. Severe Impairments

The claimant contends that the ALJ erred when he failed to find that she suffered the severe impairments of hypertension, sleep apnea [4], dysthymia [5], congestive heart failure [6], coronary heart disease, cardiomegaly [7], gastroesophageal reflux disease [8], glaucoma [9], asthma, leg edema [10], and morbid obesity; and he failed to consider those impairments beyond the second step of the sequential evaluation process. (Doc. # 18, p. 13). In response, the Commissioner argues that (1) the ALJ properly evaluated the claimant's numerous physical complaints and the objective evidence supporting them before concluding that the claimant's ailments were non-severe impairments, and (2) the claimant failed to carry her burden of establishing that her sleep apnea, heart condition, hypertension, and dysthymia were severe impairments. (Doc. # 20, p.12–14).

■ The claimant has the "burden of showing her impairment is 'severe' within the meaning of the Act." *McDaniel v. Bowen*, 800 F.2d 1026,1030–31 (11th Cir. 1986) ("Unless a claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be de-

3. Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.

4. Sleep apnea is intermittent interruptions of breathing during sleep. Webster's Medical Desk Dictionary 44, 657 (1986).

5. Dysthymia is "a morbid anxiety and depression accompanied by obsession." Webster's Medical Desk Dictionary 197 (1986).

6. Congestive heart failure is "a condition in which the heart is unable to maintain adequate circulation of blood in the body." Webster's Medical Desk Dictionary 139 (1986).

7. Cardiomegaly is "an enlargement of the heart." Webster's Medical Desk Dictionary 100 (1986).

8. Gastroesophageal reflux disease involves the regurgitation of gastric acid. Webster's Medical Desk Dictionary 260, 609 (1986).

9. Glaucoma is "a disease of the optic nerve caused by increased pressure within the eyeball that can cause a loss of vision." Webster's Medical Desk Dictionary 267 (1986).

10. Edema is "an abnormal excess accumulation of serous fluid." Webster's Medical Desk Dictionary 200 (1986).

nied disability benefits"). The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *Id.* at 1031. The claimant's burden of showing severity is light. *Id.* "A claimant need only show that her impairment is not so slight and its effect is not so minimal." *Id.*

■ Moreover, an impairment is not severe if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to perform basic work activities, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). Basic work activities, in turn, are defined as those abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 416.921 (2000).

■ For the reasons which follow, the court concludes that, while the ALJ's determination of the severity of *some* of the claimant's impairments is supported by the record, his failure to assess the severity of other, clearly identified, impairments is cause for a reversal of the overall decision.

### 1. Dysthymia Disorder, Sleep Apnea, and Hypertension

After considering all the evidence in the record, the ALJ concluded that the claimant's dysthymia disorder, sleep apnea, and hypertension were non-severe impairments (R. 33). The ALJ reviewed the medical records of the claimant's counseling and her treatment for depression related to her dysthymia disorder and concluded that her condition was not one to cause more than a minimal impact on her functioning (R. 30). The ALJ also explained that he found the claimant's sleep apnea to be a non-severe impairment because her prob-

lems with stage-two sleep and increased REM sleep were eliminated when the claimant began using a nasal CPAP [11] (R. 31). Finally, the ALJ found the claimant's hypertension to be only a non-severe impairment because her condition is controlled by medication (R. 31).

After reviewing the record in this case, the court finds that it supports these conclusions of the ALJ. The claimant's mental health records indicated that she was "coping fine" (R. 389). Furthermore, Dr. David Franco ["Dr. Franco"] expressed the opinion that the claimant's sleep apnea did not cause the claimant to be debilitated by occasional problems with sleepiness (R. 362). Finally, the claimant acknowledged in testimony at the hearing that her blood pressure was controlled by her hypertension medication (R. 56). Therefore, substantial evidence supports the ALJ's findings that these impairments are non-severe and do not cause more than a minimal impact on the claimant's ability to function.

### 2. Eye Impairment and Heart Condition

Although the ALJ properly evaluated the claimant's dysthymia, sleep apnea, and hypertension, the ALJ failed to make the proper evaluations of several other impairments that the claimant suffers in determining whether she is disabled. The claimant alleged in one disability report that she suffered from a disabling illness or injury to her eye (R. 155), and in another disability report, she stated that she was suffering from breathing and heart problems that also limited her ability to work (R. 137). The record also reveals that the claimant has been diagnosed with obesity. However, the ALJ simply failed

---

11. CPAP is the abbreviation for "continuous positive airway pressure." Webster's Medical Desk Dictionary 149 (1986).

to address these alleged impairments in his decision.

The claimant did not merely allege these conditions. The record includes evidence of pertinent medical findings. In June 1998, Dr. Lugman Ahmed ["Dr. Ahmed"] noted that the claimant had chest pains (R. 208–211) and that she had a history of congestive heart failure, with symptoms that were consistent with coronary artery disease (R. 210). Dr. Kenneth Wool ["Dr. Wool"], another cardiologist, also diagnosed the claimant with congestive heart failure related to several of her other health problems, including obesity (R. 213). Objective evidence from radiographic reports completed in October 1997, March 1998, April 1998, and October 1998 also indicate that the claimant has suffered from cardiac enlargement, mild pulmonary edema, mild congestive heart failure, and mild cardiomegaly (R. 278, 288, 293, 296).

### 3. Glaucoma, Asthma, and Obesity

Furthermore, the ALJ made no findings regarding the claimant's claims of glaucoma, asthma, and obesity. Although the evidence in the record regarding the claimant's glaucoma and asthma is ambiguous, it does indicate a history of glaucoma and asthma (R. 190, 209). For example, in March of 1998, Dr. D'Livro Beauchamp acknowledged the claimant's previous history of asthma (R. 190). In June of 1998, Dr. Ahmed diagnosed the claimant with mild glaucoma and asthma as well (R. 209). Despite these diagnoses and the claims in the claimant's disability reports, the ALJ failed to address these alleged impairments in determining whether the claimant is disabled.

With respect to obesity, it is true that the claimant did not specifically list it as one of her impairments. However, she has been diagnosed as obese on several occasions (R. 190, 213, 237, 370–371, 373). In October 1998, Dr. Wool diagnosed the claimant with morbid obesity, an opinion with which another physician, Dr. Fred Hunker ["Dr. Hunker"], agreed (R. 213). Moreover, Dr. Kenneth Sagg ["Dr. Sagg"] noted in May 1999 that the claimant was obese and needed to reduce her weight (R. 372–373), and two months later, in July 1999, Dr. Franco also recorded the claimant's diagnosis from obesity and instructed her to try to lose weight (R. 362).

Despite these diagnoses, the ALJ failed to consider the claimant's obesity in determining the claimant's severe impairments, although it was evident at the hearing. The claimant testified that she was five feet four inches tall and that she weighed 240 pounds (R. 41). Even the ALJ acknowledged that the claimant had "really been putting it on" when he discussed her weight at the hearing (R. 41).

Notwithstanding the diagnoses and objective evidence supporting the claimant's other impairments, the ALJ made no express determination as to the severity of the claimant's coronary disease, asthma, glaucoma, or obesity. Nor does the decision reveal the extent to which the ALJ evaluated those symptoms or impairments beyond step two of the sequential evaluation process. Accordingly, the ALJ's failure to consider or even address these impairments as a part of his determination of severity was reversible error.

### D. Combination of Impairments

The claimant also contends that the ALJ failed to give proper consideration to the effect of the combination of her impairments on her ability to perform work activities, and "only considered the effects of the arthritis and diabetes and not all impairments" (Doc. # 18, p. 11). The claimant concludes that "at the very least, the ALJ should have found that the combination of the claimant's impairments restricted her to a sedentary job, and thus the

application of the grids would lead to a finding that she is disabled" (Doc. # 18, p. 12).

### 1. The ALJ's Findings

Following the evidentiary hearing, the ALJ concluded, without analysis, that the claimant does not have an impairment or a combination of impairments that meets or equals in severity any impairment listed in 20 C.F.R. Part 404, Subpart P. Appendix 1. The ALJ did not make specific findings regarding the severity of each of the individual impairments and the effect of the combination of those impairments. Nor did he evaluate the effect of the combination of the claimant's impairments on the claimant's ability to perform work for which he or she is capable.

### 2. The Applicable Law

■■■ The law requires the ALJ to consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir.1993); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). Where there is more than one impairment, the claimant may be found disabled even though none of the impairments, considered individually, would be disabling. *Walker*, 826 F.2d at 1001; *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984).

Although the requirement that the combined effects of impairments be considered is universally understood, just what constitutes "consideration" is not. Indeed, the law of this circuit regarding the ALJ's responsibilities in determining the effect of a combination of impairments is somewhat ill-defined and can often lead to trial court rulings that may be perceived as inconsistent. Those rulings can, for the purpose of this court's evaluation in the instant case, be divided into two categories: *Walker* and its progeny and *Jones* and its progeny.

In *Walker v. Bowen, supra,* the Court of Appeals declared that the ALJ is required to make specific and well-articulated findings regarding the effect of the combination of impairments. Several district courts,[12] including this one,[13] have interpreted *Walker* as requiring more than a mere *conclusion* that the claimant's impairments or combination of impairments does not meet or equal a listing in the regulations. This court has previously found that "[t]he ALJ must evaluate the combination of the claimant's impairments with respect to the effect they have on the claimant's ability to fill the duties of work for which he or she is otherwise capable of performing",[14] relying on *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990) ("[T]he combination of all her impairments must also be evaluated with respect to the effect they have on her ability to fulfill the duties her past relevant work, or other work.").

The Court of Appeals, however, has never defined "well-articulated findings" or otherwise stated how much more analysis is required. Arguably, under *Walker*, the ALJ must at least refer to all of the alleged impairments.

---

**12.** *Bearden v. Shalala*, 1993 WL 664623, Unempl.Ins.Rep. (CCH) P 17676A (N.D.Ala., Dec.14 1993); *Youngblood v. Shalala*, 1994 WL 722863, Unempl.Ins.Rep. (CCH) P 14215B (N.D.Ala., Aug.18, 1994); *Baguer v. Apfel*, 65 F.Supp.2d 1345, 64 Soc.Sec.Rep. Ser. 472 (M.D.Fla., Sep.17, 1999); *Spivey v. Apfel*, 133 F.Supp.2d 1292, 73 Soc.Sec.Rep. Ser. 312 (M.D.Fla., Mar.2, 2001); *McCray v.* *Massanari*, 175 F.Supp.2d 1329, 77 Soc.Sec. Rep.Ser. 400 (M.D.Ala., Oct.22, 2001).

**13.** *Thomas v. Barnhart*, 01–M–626–N, Jan.15, 2002.

**14.** *Thomas v. Barnhart*, 01–M–626–N, Jan. 15, 2002.

It is clear that in this case the ALJ did not consider the combination of Walker's impairments before determining her residual functional capacity. The ALJ made specific reference only to Walker's left ankle and obesity. The ALJ's findings *do not even mention* Walker's arthralgias in the right knee, phlebitis in the right arm, hypertension, gastrointestinal problems, or asthma, except to the extent that these 'subjectiv[e] complain[t]s do not establish disabling pain.'.... The ALJ's failure to consider Walker's physical impairments and pain complaints in combination alone requires that the decision be reversed and remanded for reconsideration. [Emphasis supplied]

826 F.2d at 1001.

Thus, it would appear that, as a baseline consideration, *Walker* requires the ALJ in his analysis or findings at least to *mention* all of the claimant's individual impairments. It further appears that, in support of his ultimate conclusion that the combination of impairments does not meet or equal a listing in the grids or that the combination of impairments does not render the claimant disabled, the ALJ should engage in a pairing analysis which juxtaposes single impairments one with another, to determine whether or not, as an aggregate, they produce a cognizable disability.

In *Jones v. Department of Health and Human Services,* 941 F.2d 1529 (11th Cir. 1991), the Court of Appeals acknowledged the Commissioner's "duty to consider the impairments in combination", but conclud-ed that the ALJ had given adequate consideration to the combination issue based upon the following statement:

> While Jones "has severe residuals of an injury to the left heel and multiple surgeries on that area," he does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4".

941 F.2d 1529, 1533. The Court concluded that this statement "evidences consideration of the combined effect of appellant's impairments".[15] *Id.*

Although *Jones* was decided four years after *Walker,* it did not overrule, distinguish, or even mention *Walker.* Moreover, subsequent cases which have followed *Jones* have not distinguished *Walker. See,* e.g., *Davis v. Shalala, supra:*

> [t]his court has repeatedly held that an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled.

985 F.2d 528, 534 (11th Cir.1993). Inasmuch as *Davis* was decided two years after *Jones, Walker* cannot be construed as having been overruled.[16]

### 3. Applicable Standard in This Case

In summary, the ALJ in this case articulated his finding with respect to the impact of the combination of impairments in a conclusory statement. He declined to engage in a comparative analysis of the effects of the combination of the claimant's impairments on her ability to do work that

---

**15.** The *Jones* Court relied upon *Wheeler v. Heckler,* 784 F.2d 1073 (11th Cir.1986), a case decided before *Walker.* In *Wheeler,* the court had found adequate the following statement of the ALJ regarding combined impairments: "[B]ased upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a com-* *bination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months." [Emphasis supplied]

**16.** Senior Circuit Judge Clark was on the *Walker* and *Jones* panels.

she is capable of performing. Although the Court of Appeals has never particularized *Walker's* requirements, the ruling appears to suggest that, during the application of the five-step sequential analysis to determine if the claimant is disabled, the ALJ should answer the following questions, *inter alia*, when the claimant alleges multiple impairments:

- What is the effect upon the claimant's condition of *each* of the impairments, standing alone?
- Does any *one* of the impairments exacerbate the impact of another impairment?
- Would the *absence* of treatment (including surgery, medical procedures, diet, therapy, use of prosthesis, exercise) for any one of the claimant's impairments render the claimant disabled?
- If so, does the treatment recommended by a physician for that impairment prevent or compromise the recommended treatment for another impairment?
- Would the *absence* of medication (whether prescribed or over-the-counter) recommended by a physician for any impairment render the claimant disabled?
- If so, does the medication for that impairment prevent or compromise the recommended medication for another impairment?
- When the impairments are combined, or when they are considered together, does their *cumulative* effect render the claimant disabled?

The court offers the foregoing analysis not as a prescription,[17] but as a proposed pathway to fulfillment of the duty imposed by *Walker* to "make specific and well-

articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled". *Walker*, 826 F.2d at 1001; *Brown v. Heckler, supra*, at 635. Since the record does not reflect such an analysis by the ALJ, the court cannot affirm the Commissioner's ruling.

■ The court's assignment of prevalence to *Walker* is not a random one. The law in this Circuit is clear that the ALJ is charged with developing a fair and full record. *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir.1984). Toward that end, the Court of Appeals has repeatedly opted for analytical standards requiring the ALJ to state specific findings and reasons in support of conclusions regarding a claimant's disability. That these appellate edicts have been applied to diverse Social Security issues is strong support for the likelihood that a similar approach is warranted here.

For example, review in the Court of Appeals is governed by the principle that "when the [Appeals Council] has denied review, [the court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). To meet that standard, the ALJ is expected to set forth in his opinion the evidence which supports his conclusions.

■ Moreover, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). In fact, the Court of Appeals extracts the same requirement of specificity from treating phy-

---

17. The Court of Appeals, rather than this court, is still faced with the tasks of (1) expressly determining *Walker's* survivorship of *Jones*, and (2) particularizing the analysis required by *Walker*.

sicians. Thus, the Court of Appeals has found good cause for the ALJ's rejection of a doctors' opinions where the opinions were conclusory or inconsistent with their own medical records. *See Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532–33 (11th Cir.1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991).

■ Finally, ALJs are also required to provide detailed accountings in their opinions when they evaluate the severity of a claimant's pain and its impact on a claimant's condition. The Court of Appeals permits consideration of objective medical evidence and subjective testimony in determining the extent of a claimant's pain. However, if the ALJ refuses to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir.1987); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995).

If follows then that adherence to an analytical framework of the same genre as the oft-applied rulings above dictates a preference for the holding in *Walker*. Consistency suggests that specificity—having been endorsed by the Court of Appeals as an assurance of adequate consideration of evidence and as an assurance of a fertile record on review—should trump summary determinations.

## V. CONCLUSION

Accordingly, for all of the reasons articulated in this memorandum opinion, the court concludes that this case should be remanded to the Commissioner so that the ALJ can set forth all of the claimant's impairments, and then carefully consider, individually and in combination, all of the claimant's impairments to determine whether she is disabled.[18] It is therefore

ORDERED that the decision of the Commissioner be and is hereby REVERSED and this case is REMANDED to the Commissioner for further proceedings consistent with this opinion. On remand, the ALJ is specifically DIRECTED to articulate express consideration of and to make express findings regarding the severity of all of the claimant's impairments that are evident from the record. The ALJ is further DIRECTED to consider and make findings regarding the effect of the combination of her conditions upon the claimant's ability to work and whether, after such consideration, an application of the grids leads to a determination that the claimant either is or is not disabled.

## ORDER

In accordance with the memorandum opinion entered herewith, it is

ORDERED AND ADJUDGED that the decision of the Commissioner be and is hereby REVERSED and this case be and

18. The court does not find that the deficiencies in the ALJ's decision are harmless because the court cannot discern from the decision whether the ALJ properly considered all of the evidence. *See, e.g., Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir.2000)("Although a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case, *see Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir.1999), the ALJ is not free to ignore medical evidence but rather must consider the whole record"). *See also Rams v. Chater*, 989 F.Supp. 309, 318 (D.Mass. 1997)("A reviewing court cannot base an affirmance of the ALJ's determination of no disability solely on the Commissioner's allegations on appeal that an appropriate step-two finding was made, when, in fact, nothing in the ALJ's decision reasonably suggests that the ALJ reached such a finding").

hereby is REMANDED to the Commissioner for further proceedings.