Joseph N. DEFORD, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 3:03cv1066M.

United States District Court,
M.D. Alabama,
Eastern Division.

May 28, 2004.

Darryl Wayne Hunt, Felice Ann S. Goldstein, Clark & James, LLC, Birmingham, AL, for Plaintiff.

Jo Anne B. Barnhart, pro se.

Leura Garrett Canary, R. Randolph Neeley, Montgomery, AL, for Defendant.

**MEMORANDUM OPINION**

McPHERSON, United States Magistrate Judge.

Claimant Joseph Deford ["Deford"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to §§ 405(g) and 1383(c) of the Social Security Act (Doc. # 15, p. 1). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED for the reasons set forth herein.

**I. PROCEDURAL BACKGROUND AND FACTS**

Deford petitioned for supplemental security income under Title II and Title XVIII of the Social Security Act on 31 July 2001 (R. 78–81, 330–333), alleging a disability onset date of 31 May 1999 and has not worked since that time (R. 331). By his own account, he is unable to work due to "lower back problems, progressively getting worse ... cannot sit, stand, walk for any length at times. Cannot lift anything" (R. 84). He was born on 7 August 1972 and was therefore 31 years of age at the time of the hearing (R. 79). Deford has a GED and has completed one year of college (R. 34). He was on active duty in the United States military from 1 December 1993 until 31 January 1997 (R. 79)

After hearing Deford's petition for social security benefits on 24 September 2003 (R. 30–61), an Administrative Law Judge ["ALJ"] issued an adverse decision on 6 November 2002 (R. 12–25). The Appeals Council denied Deford's petition for review, thus rendering the ALJ's decision the Commissioner's final determination (R. 5–8). This action followed on 27 October 2003 (Complaint, Doc. # 1).

**II. STANDARD OF REVIEW**

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)). The court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Appel,* 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that

1. In *Graham v. Apfel,* 129 F.3d at 1422, the Court of Appeals has stated that:
   Substantial evidence is described as more than a scintilla, and means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427; 28 L.Ed.2d 842 (1971).

the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater,* 84 F.3d at 1400 (citations omitted).

## III.  DISCUSSION

### A.  Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984); *Williams v. Barnhart,* 186 F.Supp.2d 1192, 1195 (M.D.Ala.2002). The steps are as follows:

1.  If the claimant is working or engaging in substantial gainful activity, he is not disabled. However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

2.  If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment

has lasted or is expected to last for more than twelve (12) months.

3.  If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled. If neither of the above conditions, when considered in association with the continuity requisite of twelve (12) months, is deemed true, the ALJ must go on to step 4 of the evaluation sequence.

4.  If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

5.  If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq. and/or 42 U.S.C. §§ 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration re-

quirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

### B. The ALJ's Findings

The ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. Deford has not engaged in any substantial gainful activity since his alleged disability onset date (R. 24).

2. Deford has the following severe impairments: "mild degenerative changes at L4–5, lumago, transitional vertebrae at S1 with sacralization of the left transverse process of L5 with chronic back pain, adjustment disorder, and alcohol abuse" (R. 24).

3. Although Deford has severe impairments, when considered individually and in combination, these impairments do not meet or equal in severity, any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 24).

4. Deford's allegations regarding his pain and functional limitations are disproportionate to the weight of the medical evidence and not entirely credible (R. 24).

5. Deford does not possess the residual functional capacity to perform his past relevant work. However, he can perform work that is available in significant quantities in the national economy (R. 25).

6. Deford retains "the residual functional capacity to sit for thirty minutes without interruption and up to six hours during an eight-hour workday; stand up to twenty minutes without interruption and up to two hours during an eight-hour workday; walk for up to twenty minutes without interruption and up to two hours during an during an eight-hour workday; frequently lift, carry, push and pull up to ten pounds; and occasionally lift, carry, push and pull up to twenty pounds" (R. 25).

7. Deford has not been under a disability at any time through the date of this decision (R. 25).

### C. Application of the Standard

Based on the ALJ's findings, Deford survives step one and step two of the sequential evaluation process, because he has not engaged in any substantial gainful activities since his alleged onset date and he has severe impairments (R. 25). However, he does not survive step three, because his severe impairments, when considered individually and/or in combination with others, do not meet the equivalent of a listed impairment (R. 24). As a result, according to the ALJ, Deford is not disabled within the meaning of the Act (R. 25).

As a matter of law, even if the ALJ determines at step three of his analysis that a claimant does not have a combination of impairments that meet the equivalent of a listed impairment, there can nonetheless be a finding of disability. Such a finding is triggered by the ALJ's assessment at step four, through a determination of the claimant's residual functional capacity ["RFC"].

In the instant matter, the ALJ did assess Deford's RFC and found that the claimant had the ability to perform "sedentary" work (R. 24). However, he cannot return to any past relevant work (R. 24). Deford disagrees, and contends that the ALJ erred as follows:

1. The ALJ erred in failing to consider Deford's shortness of breath and chest pain to constitute severe impairments. As a result, he did not

properly consider all of Deford's severe impairments (Doc. # 10, pp. 5–7).

2. The ALJ erred in finding that Deford retains the residual functional capacity occasionally lift 20 pounds, frequently lift 10 pounds, sit, with normal breaks, for six hours in an eight hour work day, and stand and/or walk for a total of 2 hours in an eight hour work day (Doc. # 10, pp. 7–13).

In response, the Commissioner argues that substantial evidence supports her decision (Doc. # 11, p. 8). For the reasons set forth herein, the Court agrees with the Commissioner.

### D. Analysis of Evidence

Deford contends that the Commissioner's decision should be reversed for two reasons. First, the ALJ erred by not applying the pain standard to determine that his subjective complaints of disabling pain are not credible (Doc. # 13, pp. 6–7). And second, the ALJ committed reversible error when failing to consider Deford's mental deficiencies as severe impairments (Doc. 13, p. 5).

### 1. Deford's Complaint

The gravamen of Deford's complaint regarding his allegations of pain and mental deficiency is:

In both Exhibits 2F and 3F there are two different GAF's of 50 from two different treating sources, both in 2001. Since Plaintiff tried to commit suicide in July 2001, it appears obvious that the ALJ's statement that "His mental impairments caused a mild restriction in activities of daily living" (R. 23), cannot possibly be based on substantial evidence. Plaintiff submits that the ALJ is substituting his own opinion for that of Plaintiff's treating sources regarding his mental impairments . . .

Plaintiff submits that the ALJ failed to consider the Eleventh Circuit pain standard and also further failed to consider his pain and other non-exertional impairments within the framework of Social Security's own ruling SSR 96–7 . . . Plaintiff's medication list indicates that he was taking seven medications, four of which were for pain and one of which contained Codeine. The ALJ may not think Plaintiff's pain is disabling, but it appears that his treating doctors do, since they have prescribed him narcotic pain medication, a TENS unit, and physical therapy . . .

Plaintiff submits that the ALJ particularly failed to consider his non-exertional impairments, both his mental impairments which are well-documented in his VA records as well as his pain which is equally well-documented.

(Doc. # 13, pp. 5–8).

### 2. Analysis of the Alleged Errors

*a. Whether the ALJ's Failure to Consider Deford's Mental Deficiency as a Severe Impairment Constitutes Reversible Error*

According to Deford, he "has been treated at the VA Hospital, and on at least two occasions since his stated onset date was assigned a Global Assessment Functioning (GAF) of 50 and an Axis IV severe diagnosis" (Doc. # 13, p. 5). However, the weight of Deford's argument do not support the contention that mental deficiency should have been listed as a severe impairment. According to the record, Deford was treated at the East Alabama Medical Center in Opelika in July 2001 for issues associated with his mental health, particularly, an overdose. Two notations were made evidencing that his episode resulted from a troubled relationship with his fian-

cee, Barbara. Particularly, Dr. Rohini Reddy noted that:

> **MENTAL STATUS:** ... He reports that they were not having a good relationship, and about a few weeks ago she left him for a day or two, and he got worried as he did not know where she was and called the Police. When she returned, they had a long discussion with the way she just left home without informing him where she was, and that they would both need counseling. It is not clear at this time whether she agreed to do so or not, but again, three days ago she left, leaving him a note that she is leaving with friends and will return. This got him very upset and on Monday night, he felt very lonely, dejected, and unwanted. She could never do anything wrong, that no matter what he does, it always goes wrong, and he is always there for people to help them, but when it comes to himself, that either people do not help him or put him down, and when he climbs 4 steps up, he always falls 10 steps down, and he felt that since he could do nothing right and he is worthless that he should die, took the Unisom, went for a walk, returned home, fell asleep, and woke up the next day still alive, and went to the neighbor who is his fiance's brother, and told them he took an overdose when they rushed him to the hospital and he also, according to the emergency room report from Russell Hospital, that he also told the Doctor that he had a gun at home and nobody knew about it. *This evening, he is absolutely denying ever mentioning about the gun, and that he is not suicidal, he had no intent of dying. It was just a momentary thing when he felt very depressed, sad, and that nothing ever goes well in his life,* **when he overdosed with no intention of dying.** Insight and judgement [sic] very limited and superficial at this time ...

**DIAGNOSES:**

AXIS I: Adjustment disorder with disturbance of mood and conduct. Rule out major depression, single episode. Rule out depression, secondary to medical condition.

AXIS II: Borderline personality disorder.

AXIS III: Overdose and low back pain.

AXIS IV: Moderate.

AXIS V:[GAF] 30.

(R. 140–141).

The following day, he was discharged and in his summary, Dr. Reddy noted that:

> **HOSPITAL COURSE:** The patient was admitted to the Adult Psychiatric Unit. At the time of admission, the patient was easily agitated and focusing on his girlfriend who left him and his mother, and his father who died. He was [medicated for his back and depression]. He reports that he retired Military, and he had back injury for which he is currently actively enrolled and being treated at the Tuskegee VA, and he plans to go to Birmingham VA for possible surgery ... When [his girlfriend] left him the second time, he took the overdose ...

> **DISCHARGE MEDICATIONS:** Depakote ER 500 mg. At 9:00 PM, Robaxin 500 mg., bid, with Ultram 50 mg. bid pm.

> **FINAL DIAGNOSES:**

> AXIS I: Adjustment disorder with disturbance of mood and conduct. Rule out major depression, single episode.

> AXIS II: Borderline personality disorder.

> AXIS III: Overdose. Chronic low back pain.

> AXIS IV: Improved.

AXIS V: 50.

(R. 138–139).

Upon entrance to the East Alabama Medical Center, Deford was assessed as having a Global Assessment Function ["GAF"] of 30. Upon release in July 2001, his GAF was 50. Two months later, on 11 September 2001, he had a GAF assessment at 50 when examined by a Veterans Administration ["VA"] psychiatrist (R. 165). At this juncture, he advised that "I still have mood swings and I have noticed them. I do not want to be around people and I start to be sad and sorrowful. I am forgetful and I do not like this feeling" (R. 165). Deford's feelings are important. However, a GAF of 50 is not suggestive of a severe mental deficiency. If, however, Deford's GAF were consistently in the range between 20 and 30, his mental state would very well qualify as a severe impairment.

Dr. Reddy, the Dr. who made the above notations did treat Deford, and "[t]he law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997) (*citing MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986)); *Phillips v. Barnhart,* 357 F.3d 1232 (11th Cir.2004).

The Commissioner's regulations also recommend a similar preference for the opinions of treating doctors.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

■ The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. "Good cause" exists where the doctor's opinion was not bolstered by the evidence, or **where the evidence supported a contrary finding.** See *Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280–81 (11th Cir.1987). Good cause also exists where the doctors' opinions were conclusory or inconsistent with their own medical records. See *Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532–33 (11th Cir. 1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991).

■ In the instant matter, the analysis need not reach whether there was good cause for the ALJ's findings on severity of impairments, because as noted earlier, he gave great deference to the medical opinions of Dr. Reddy on issues purportedly related to Deford's mental health. In support of his decision to do so he even advised that "I give substantial weight to the diagnoses and opinions of Dr. Reddy" (R. 19).

Furthermore, her findings were consistent with those of other doctors. For instance, Dr. Rose, a psychologist and the VA noted that Deford's affect seemed "stable and modulated" (R. 16). An agency psychologist, Dr. Kenneth Warren, noted only mild restrictions in daily activities and social functioning and as well, only mild deficiencies in concentration, persistence, and pace (R. 222). As a result, his mental impairments are not severe in nature. In consideration of these findings, the ALJ reasoned that

The disposition indicates that the claimant has impairment(s) that are considered not severe based on category 12.04 due to depressive syndrome characterized by sleep disturbance or pain, feelings of guilt or worthlessness, and difficulty concentrating or thinking and category 12.08 for borderline personality disorder.

(R.17).

Based on the evidence presented by the ALJ and in the record and also, the arguments presented by the claimant as a result thereof, the court concludes that the ALJ did not err in failing to consider Deford's purported mental deficiencies as a severe impairment.

### b. Deford's Subjective Allegations of Pain

■ Deford has also made some subjective allegations of pain. Particularly, he asserts that "the ALJ failed to consider his non-exertional impairments, both his mental impairments which are well-documented in his VA records as well as his pain which is equally well-documented" (Doc. # 13, p. 8). The court concludes that while the ALJ has considered Deford's chronic back pain as a severe impairment, his complaint of mental deficiency, to the extent alleged, is not supported by the evidence of record. It fails for want of objective medical evidence that either confirms the severity of the alleged deficiency or would be reasonably expected to give rise to the alleged deficiency under the pain standard.

■ As a matter of law, "[t]he Secretary must consider a claimant's subjective testimony of pain if [ ]he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) (citations omitted).

As regards his mental deficiency, Deford fails this test. He has not been diagnosed with depression or a personality dysfunction or any other deficiency for any term that would, when combined with his complaints and melancholy state, suggest a severe impairment. As a matter of fact his GAF has typically been noted at or around 50. He has been under the care of the VA for a number of years, and there is no indicia of recurrent depression. Furthermore, when purportedly suicidal, treatment notes indicate that he never intended to take his own life when overdosing. When considered in concert, it would unreasonable to surmise that Deford has mental deficiency to the extent of a severe impairment.

In consideration thereof, the Commissioners decision not to include chest pains and shortness of breath as severe impairments in the instant matter is hereby AFFIRMED.[2]

---

**2.** As a word of caution, counsel is advised that the court may impose sanctions against attorneys and or firms for frivolous claims as outlined in Federal Rule of Civil Procedure ["FRCP"] 11(b)(2), pursuant to FRCP 11(c): The enabling provision advises that:

> **(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-(2) the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Based on the potential ramifications, counsel should be careful to ensure that claims are warranted before presenting them to this

## IV. CONCLUSION

Therefore, it is hereby ORDERED that the decision of the Commissioner is AFFIRMED.

## FINAL JUDGMENT

Upon consideration of the Memorandum Opinion entered in this case on this date, it is ORDERED and ADJUDGED that judgment be and is hereby entered in favor of the Commissioner and against the plaintiff as a matter of law.

court. In the face of not so doing and the court's failure to issue appropriate sanctions, the efficacy of this rule and its ability to assist in judicial economy may be compromised. In the future, parties should be mindful that the court is hard-pressed to forego judicial economy for scenarios presented it such as this one.