**Cheryl LIPSON, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 2:02CV1311–M.**

United States District Court, M.D. Alabama, Northern Division.

June 16, 2004.

Micki Beth Stiller, Law Office of Micki Beth Stiller, Montgomery, AL, for Plaintiff.

Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, Jo Anne B. Barnhart, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Cheryl Lipson ["Lipson"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to §§ 405(g) of the Social Security Act (Doc. # 17, p. 1). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED for the reasons set forth herein.

## I. PROCEDURAL BACKGROUND AND FACTS

Lipson initially petitioned for supplemental security income under Title II and Title XVI of the Social Security Act on 23 November 1998 (R. 50, 81). It was denied initially and upon reconsideration, however she did not appeal (R. 50–70, 300–313). Rather, she reapplied on 25 January 2000, requesting a *de novo* hearing (R. 81–83). Her alleged disability onset date is 15 March 1997 (R. 81).

By her own account, she is unable to work due to "diabetes, back pains, leg pains, chest pains and toes" (R. 86). Her illness limits her ability to work "becaus [sic] I start in pain" (R. 86). She last worked on 10 February 1997 and notes that she had to stop working, "[b]ecause the doctor told me I had to because of the baby" (R. 86).

While the record is replete with comments from medical sources, the court will forego an overview of them at this time as they are not germane to the issues presented in Lipson's complaint. Rather, at issue is the role Lipson's educational functioning, rather than level of educational attainment, plays in evaluating whether she is disabled.

Lipson was born on 31 December 1972 and was therefore 29 years of age at the time of the hearing (R. 81). Lipson completed the tenth grade and has been employed in a variety of positions, such as security guard, moving company packer, and waitress, cook, and cashier in fast food establishments (R. 87). By her own account, in her previous positions, she used machines, tools, and equipment, used technical knowledge and skills, and supervised other people (R. 87). However, none of her work assignments required her to "do any writing, complete reports, or perform any duties like this" (R. 87).

After hearing Lipson's petition for social security benefits on 10 July 2002 (R. 24–49), an Administrative Law Judge ["ALJ"] issued an adverse decision on 27 September 2002 (R. 8–17). The Appeals Council denied Lipson's petition for review, thus rendering the ALJ's decision the Commissioner's final determination (R. 6–8). This action followed on 18 August 2003 (Complaint, Doc. # 1).

## II. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

Rather, the court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater,* 84 F.3d at 1400 (citations omitted).

## III.  DISCUSSION

### A.  Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984); *Williams v. Barnhart,* 186 F.Supp.2d 1192, 1195 (M.D.Ala.2002). The steps are as follows:

1.  If the claimant is working or engaging in substantial gainful activity, he is not disabled. However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

2.  If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment has lasted or is expected to last for more than twelve (12) months.

3.  If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled. If neither of the above conditions, when considered in association with the continuity requisite of twelve (12) months, is deemed true, the ALJ must go on to step 4 of the evaluation sequence.

4.  If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

5.  If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not

---

**1.** In *Graham v. Apfel,* 129 F.3d at 1422, the Court of Appeals has stated that:

Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson·v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq. and/or 42 U.S.C. §§ 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration requirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R. 404.1520(a)–(f), 416.920(a)–(f).

## B. *The ALJ's Findings*

The ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. Lipson met the insured status requirements of the Social Security Act as of her amended onset date (R. 15).

2. Lipson has not engaged in any substantial gainful activity since her amended disability onset date (R. 15).

3. Lipson has the following severe impairments: "non-insulin dependent diabetes mellitus, obesity, hypertension, status post left L5–S1 microdiskectomy for left S1 radiculopathy with substantial improvement, depression, rule out psychogenic pain disorder and borderline intellectual functioning" (R. 15).

4. Although Lipson has severe impairments, when considered individually and in combination, these impairments do not meet or equal in severity, any impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (R. 15).

5. Lipson's allegations regarding her pain and functional limitations are not entirely credible (R. 15).

6. Lipson does not possess the residual functional capacity to perform her past relevant work. However, she "retains the residual functional capacity to perform light work, with a sit/stand option, within the limitations as set forth in the functional assessment/medical source statement offered by Dr. Bell and in the mental residual functional capacity assessment executed by Dr. Nuckols" (R. 16).

7. Lipson is a younger individual and "has a 10th grade education" (R. 16).

8. Lipson has not been under a disability at any time through the date of this decision (R. 25).

## C. *Application of the Standard*

Based on the ALJ's findings, Lipson survives step one and step two of the sequential evaluation process, because she has not engaged in any substantial gainful activities since her amended disability onset date and she has severe impairments (R. 15). However, she does not survive step three, because her severe impairments, when considered individually and/or in combination with others, do not meet the equivalent of a listed impairment (R. 15). As a result, according to the ALJ, Lipson is not disabled within the meaning of the Act (R. 16).

As a matter of law, even if the ALJ determines at step three of his analysis that a claimant does not have a combination of impairments that meet the equivalent of a listed impairment, there can nonetheless be a finding of disability. Such a finding is triggered by the ALJ's

assessment at step four, through a determination of the claimant's residual functional capacity ["RFC"].

In the instant matter, the ALJ did assess Lipson's RFC and found that the claimant had the ability to perform "light" work (R. 16). However, she cannot return to any past relevant work (R. 16). Lipson disagrees, and contends that the ALJ erred as follows:

1. He did not resolve a conflict in the evidence regarding Lipson's level of education (Doc. # 17, p. 3).

2. "The vocational expert's testimony is unreliable, given his apparent misunderstanding of the pertinent regulatory requirements" (Doc. # 17, p. 3).

3. "The ALJ failed to make inquiry to the vocational expert as to whether the expert's testimony conformed with or departed from the descriptions contained in the Dictionary of Occupational Titles (DOT)" (Doc. # 17, p. 3).

In response, the Commissioner argues that substantial evidence supports her decision (Doc. # 11, p. 8). For the reasons set forth herein, the Court agrees with the Commissioner.

## D. *Analysis of Evidence*

Lipson contends that the Commissioner's decision should be reversed for three reasons. First, there is a conflict as to Lipson's level of education. Second, the vocational expert's testimony is unreliable, because he does not understand the regulatory requirements. And third, the ALJ committed reversible error in failing to inquire as to whether the vocational expert's job descriptions were consistent with those as outlined in the Dictionary of Occupational Titles ["DOT"]. For the reasons set forth herein, the court disagrees.

### 1. Lipson's Education

■ The ALJ noted in his analysis that Lipson "finished the 10th grade" (R. 9). As part of his findings, he noted that "[t]he claimant has a 10th grade education" (R. 16). The gravamen of Lipson's complaint regarding her education is:

The ALJ found that Lipson had a tenth grade education. (Tr. at 16). This finding is not supported by substantial evidence. The ALJ erroneously determined Lipson's level of education by accepting Lipson's testimony as to what grade she completed. (Tr. at 26). By regulation, the numeric grade level should be used to determine an individual's educational abilities unless "there is no other evidence to contradict it." 20 C.F.R. § 404.1564(b)(2003). Here there is evidence that contradicts the ALJ's finding. The documentary record shows that Lipson attended special education classes in elementary and junior and senior high schools at Jefferson Davis High School, Carver Junior High, and Peterson Elementary. (Tr. 92, 252). Lipson was placed in special education in the sixth grade. (Tr. at 252). Additionally, standardized intelligence test results by Dr. Kirkland, Ph. D., revealed that Lipson had borderline intellectual functioning. (Tr. at 252). Dr. Kirkland acknowledged that Lipson reported that she could read, but stated that his assessment revealed that she was illiterate (Tr. at 252). Dr. Kirkland stated that the WRAT–R test revealed that Lipson was reading at less than a third grade level. (Tr. at 252). Thus, although Lipson testified that she had a tenth grade education, her actual level of education attained was significantly lower.

. . .

This reviewing Court should now reverse, as in *Wolfe v. Chater,* 86 F.3d

1072, 1076–77 (11th Cir.1996), not because Lipson is illiterate, but because substantial evidence does not support the ALJ's finding that Lipson has a tenth grade education.

(Doc. # 17, pp. 6–7).

The court disagrees. Although Lipson may not read at the tenth grade level, that does not mean that she did not receive a tenth grade education and/or attend classes with tenth graders. Furthermore, her level of reading ability, as arguably disclosed by the test performed by Dr. Kirkland, does not reflect her ability to reason or to work or to supervise. Nor does it reflect her social skills, her ability to follow or give verbal instructions, or to perform a myriad of manual tasks which require no reading.

If Lipson had, hypothetically, attained only a third-grade education, rather than a third-grade reading level, the court's analysis and the outcome of this case might be different. However, it is undisputed that Lipson remained in school until she completed the tenth grade, and her employment history indicates that, quite apart from her ability or inability to read, she has successfully held positions which required her to perform intelligence-based tasks such as maintaining security logs, operating cash registers, counting money, and/or reading menus and taking and writing down orders.

Regrettably, society offers many examples of high school drop-outs who do not read at their grade level, but who are nevertheless capable of performing jobs which require intellectual functioning. These persons are not eligible for social security benefits merely because they have substantial reading deficiencies. They may be "less able", but they are not automatically deemed "disabled".

Upon review of Dr. Kirkland's notes as indicated and referenced by the claimant above, the court concludes his results are contradictory, at best. On one hand, he finds that the claimant can read, albeit at less than the third grade level. On the other hand, he calls the claimant illiterate, although by Lipson's own account, she can read. "Illiterate" is defined by Webster's II New Riverside Dictionary as "unable to read and write." Similarly, the Commissioner's regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 404.1564(b)(1).

Lipson can write. As a matter of fact, she completed a great portion of the materials in her application and supplements that are part of this record. Furthermore, according to Dr. Kirkland, she can read. Whether she reads at the tenth grade level is immaterial; tests reveal that she reads at the third grade level, and she completed a formal tenth grade education. That she does not read at the tenth grade level is not a basis for concluding that she is incapable of functioning at this level and therefore, the Commissioner's decision should be reversed.

Perhaps the most critical reason why Dr. Kirkland's assessment should not be dispositive of the court's review of the ALJ's finding regarding Lipson's education is the fact that his was an assessment of her reading skills and intellectual functioning. His assessment made no findings regarding *the impact of Lipson's reading skills and intellectual functioning upon her ability to perform vocational tasks.* For example, Lipson's argument suggests that the ALJ should have assumed that her diminished intellectual functioning rendered her unable to perform the jobs listed by the VE, including assembler, sorter, and facilities attendant. Notwithstanding the evidence of Lipson's *status,* in the absence of evidence of *impact,* the court cannot conclude that the

ALJ's determination was unsupported by the record.

With her tenth grade education, Lipson has supervised, waited tables, and performed a host of other jobs. Her belief that the ALJ made a technical misstatement that has not been shown to affect the analysis associated with his decision does not constitute a viable reason to conclude that the ALJ committed reversible error. For these reasons, the court finds that the Commissioner's determination that Lipson completed the tenth grade should be affirmed.

### 2. Reliability of the Vocational Expert's Testimony

■ Lipson contends that the ALJ erred in his evaluation of the Vocational Expert ["VE"]'s testimony (Doc. # 17, pp. 10–11). She specifically argues that the VE's assessment of certain jobs that she would be capable of performing were incompatible with the level of skill required, as outlined in the *Dictionary of Occupational Titles* ["DOT"](Doc. # 17, pp. 10–12). Thus, the VE's analysis is in conflict with standards outlined in the DOT. As authority for its rationale, Lipson cites to the Eighth Circuit's decision in *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.):

> For each job described, the Dictionary of Occupational Titles specifies the type of reasoning capabilities the job requires. 2 U.S. Dep't of Labor, Dictionary of Occupational Titles, 1010–11 (4th ed.1991). For instance, a job rated reasoning level one requires the ability to understand and carry out simple instructions, whereas a job rated reasoning level two requires the ability to understand and carry out detailed instructions. Id. at 1011. Many of the jobs listed require level two reasoning

or higher in the unskilled sedentary category . . .

(Doc. # 17, p. 12), citing to *Lucy v. Chater*, 113 F.3d at 909.

Based on the above, Lipson concludes that the jobs enumerated by the VE as being ones which Lipson could perform were in conflict with Lipson's capabilities, due to her limited ability to reason, as indicated by her true level of educational achievement (Doc. # 17, p. 12). Furthermore, presented with this conflict, the ALJ should have queried the VE as to whether the jobs he outlined conformed or departed from those contained in the DOT (Doc. # 17, p. 3).

The ALJ determined that Lipson was not capable of performing a full range of light work, so he appropriately called a VE to testify as to whether, given her limitations, she was capable of performing other jobs in the national economy (R. 37–44). The VE testified that Lipson could perform the following jobs: facilities attendant, private household attendant, assembler, sorter, and/or routine hand worker (R. 15, 40). Lipson, on the other hand, contends that some of the jobs require a level or skill that the ALJ has effectively limited based on the mental residual functional capacity assessment conducted by Dr. Nuckols,[2] upon which the ALJ relies.

The Court of Appeals has specifically held "that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229–1230 (11th Cir.1999), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). In reaching this decision, the Court of Appeals noted that the DOT states that it is not a comprehensive source of information and that it should be supplemented with local job information.

---

**2.** "Cl. would have the ability to understand and remember simple instruction but would

have difficulty with detailed instruction" (R. 257).

*Id.* "The VE provides this vital [supplemental] information." *Id.*

The Court of Appeals further noted that " 'in order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.' " *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 7 (11th Cir.2004), *quoting Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999)(*citing McSwain v. Bowen,* 814 F.2d 617, 619–20 (11th Cir.1987)). Because the ALJ did just that, the Magistrate Judge finds that Lipson's argument is meritless.

For all of these reasons, the Magistrate Judge finds no error in the ALJ's decision and finds as well that the ALJ's decision is supported by substantial evidence and is the result of the application of appropriate legal standards.

## IV. CONCLUSION

Therefore, it is hereby ORDERED that the decision of the Commissioner is AFFIRMED.