Lawrence JONES, Plaintiff–Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 90–7585

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Sept. 18, 1991.

Nelson Simmons, Jr., Legal Services of North–Central Alabama, Inc., Decatur, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Katherine Corley, Asst. U.S. Atty., Birmingham, Ala., for defendant-appellee.

Before FAY and BIRCH, Circuit Judges, and CLARK, Senior Circuit Judge.

PER CURIAM:

Appellant Jones filed applications for disability on June 25, 1982, June 3, 1983, and

June 8, 1985 in which he claimed disability due to arthritis in his left foot, toe, and knee as well as nerve damage affecting his entire left side to the hip. Mr. Jones did not request reconsideration of his applications, and the ALJ found no reason to reopen those determinations. On June 2, 1987, appellant again filed applications for disability insurance benefits and supplemental security income, pursuant to sections 216(i), 223 and 1602 of the Social Security Act (hereinafter "the Act"),[1] in which he alleged disability resulting from a foot injury, infection, and arthritis. Both applications were denied initially and on reconsideration. Following these denials, appellant requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). At the hearing, the ALJ concluded that Mr. Jones was not disabled within the meaning of the Act. On November 3, 1989, the Appeals Council denied request for review, and the ALJ determination became the final decision of the Secretary of Health and Human Services.

Mr. Jones then commenced this action in the district court for the Northern District of Alabama. After reviewing the record, the district court, on July 19, 1990, affirmed the Secretary's determination, and this appeal followed.

We affirm.

## I. FACTS

Mr. Jones first consulted Dr. Richard Freeman, his treating physician (a podiatrist), on October 30, 1980, reporting that his foot had been crushed by a forklift while on the job. On July 21, 1982, Dr. Freeman diagnosed traumatic arthritis of the left heel, pinched nerve associated with periostitis of the left heel, and traumatic neuroma with nerve entrapment. After numerous surgeries on the left heel, Dr. Freeman was of the opinion that Mr. Jones had a fifteen to twenty percent permanent disability from excessive standing or working on his feet.

In a disability update letter dated November 24, 1987, Dr. Freeman reported that Mr. Jones had undergone extensive reconstructive bone surgery on his left foot and was "rendered totally incapable of performing any kind of labor at this time." In April 1988, Dr. Freeman reported that Mr. Jones could lift "very little" because of severe pain. Mr. Jones could stand or walk very little because a "chronic condition affect[ed] his entire extremity." In a letter to ALJ Shirley on January 11, 1989, Dr. Freeman wrote that Mr. Jones' main problem was chronic pain associated with nerve damage. Dr. Freeman reported that Mr. Jones was suffering from severe neurological damage and traumatic arthritis. As a result, Mr. Jones could not stand on his left foot. However, sitting was not impaired.

During the period June 3, 1980 through July 1988, Mr. Jones saw at least six other physicians. Of particular relevance are two exams. Dr. David Khoo, in a consultative exam in July of 1988, noted that Mr. Jones walked with a cane bearing weight only over the ball of his left foot. Dr. Khoo reported that the scar was nonsensitive without evidence of neuroma or swelling and without reflex sympathetic dystrophy. Mr. Jones jumped, howled, and groaned when pressure was applied to the scar, but Dr. Khoo found no reason for this reaction.

Dr. Robert Sparks also examined Mr. Jones, first on June 3, 1980, two months after the injury. An x-ray in August 1980 revealed no abnormality. Dr. Sparks saw appellant again on September 21, 1988. After x-ray, Dr. Sparks found no change in the intervening eight years. Despite Mr. Jones' reporting that he did not bear weight on his left heel, Dr. Sparks found a normal wear pattern on the left shoe. No objective evidence from Dr. Sparks supports Mr. Jones' contention that he cannot bear weight on his left heel. In a physical capabilities evaluation, Dr. Sparks noted that lifting, carrying, standing and walking were affected, but this determination was based on Mr. Jones' history only.

The ALJ found that appellant Jones had not engaged in substantial gainful activity since the onset of his alleged disability on December 31, 1982. The ALJ also found

1. 42 U.S.C. §§ 416(i), 423, 1381a.

that Mr. Jones has severe residual of an injury to his left heel and multiple surgeries, but that he does not have impairment or a combination of impairments listed in, or medically equal to one listed in Appendix, Subpart P, App. 1, Regulation No. 4.[2] The ALJ found no objective clinical evidence of a physical condition which could reasonably be expected to produce the severe pain, swelling, and drowsiness caused by pain medication that Mr. Jones alleged would prevent sustained activity at any exertional level. Mr. Jones can perform a full range of sedentary work except for prolonged standing or walking, lifting over ten pounds, repetitive or extensive climbing or use of left foot controls.

The ALJ also found that Mr. Jones was unable to perform his past relevant work as a psychiatric aide or general shop helper. The vocational expert, David Chisolm, testified that if Mr. Jones was able to perform sedentary work, but had some difficulty walking and experienced pain to a slight degree, he would be able to perform jobs such as cashier, quality control inspector, hospital admitting clerk, telephone solicitor, telephone answering service operator, or timekeeper.

After reviewing the evidence, the ALJ concluded that based on an exertional capacity for sedentary work, and based on Mr. Jones' age, education, and work experience, there were a significant number of jobs that Mr. Jones could perform. The ALJ, on this basis, concluded that Mr. Jones was not disabled.

## II. DISCUSSION

Appellant raises numerous issue on appeal. First, appellant challenges the Secretary's determination that he is not disabled and has the residual functional capacity to perform sedentary work. He argues that the Secretary failed to give adequate reasons for rejecting his pain testimony, his treating physician's findings and conclusions, and medical evidence of an injury that would cause severe pain.

As appellant correctly notes, this court has held that

[s]ubjective pain testimony which is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which claimant complains is in itself sufficient to sustain a finding of disability.[3]

In this case, however, the Secretary specifically held that there was "no objective clinical evidence of a physical condition which could reasonably be expected to produce the severe pain, swelling, and drowsiness caused by pain medication the claimant alleges prevent sustained activity at any exertional level."[4]

The Secretary also must articulate reasons which are based on substantial evidence[5] if he refuses to credit a claimant's subjective pain testimony.[6] The ALJ noted that Dr. Sparks' examination of appellant's shoes revealed that the right shoe and left shoe bore the same wear patterns. Dr. Sparks also concluded that even if Jones' complaints were believed, nothing prevented him from performing a sedentary job. This finding is consistent with Dr. Freeman's, the treating physician's, August 19, 1987 physical capacities evaluation, in which he stated that Mr. Jones could sit for six hours, and stand and walk for an hour each during the course of an eight hour day. Another doctor, Dr. Chanault, noted that while Mr. Jones had arthritis despite a normal x-ray, any impairment was limited to the left foot and leg. The ALJ further noted that Mr. Jones testified that he had blurred vision, but no doctor found any vision difficulties.

While we acknowledge Dr. Freeman's relationship to appellant as his treating physi-

---

2. R1–2–24.

3. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986).

4. (Tr. 22). *See, e.g., Jones v. Bowen*, 810 F.2d 1001 (11th Cir.1986).

5. In *Bloodsworth v. Heckler*, we articulated this standard as follows:

Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.
703 F.2d 1233, 1239 (11th Cir.1983).

6. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

cian of some ten years, Dr. Freeman's reports are contradicted by several physicians, including Dr. Sparks, who treated appellant as early as 1980. Perhaps even more significant is Dr. Freeman's apparent agreement with Dr. Sparks that, in Dr. Sparks' words, there is nothing to prevent appellant from working at a "sitting type job." From the record, it thus appears that Dr. Freeman's opinion of disability is not consistent with his own physical capacities evaluation regarding appellant's ability to perform sedentary work. For the reasons stated above, we find that the Secretary has shown good cause for rejecting Dr. Freeman's opinion that appellant Jones is disabled.

■ Next, appellant argues that the ALJ failed properly to consider the combined effect of his pain and the side effects of pain medication. Where a claimant has alleged several impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled.[7]

■ In *Wheeler v. Heckler*,[8] we found adequate the following statement of the ALJ regarding combined impairment:

> [B]ased upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months.[9]

Based upon this statement by the ALJ, this court concluded that "[i]t is clear the ALJ considered the combination issue."[10] Similarly, here, the ALJ specifically found that while Jones "has severe residuals of an injury to the left heel and multiple surgeries on that area," he does not have "an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4."[11] The ALJ's determination evidences consideration of the combined effect of appellant's impairments.

■ Jones also argues that the ALJ erred in refusing to reopen his prior applications for disability benefits in 1982, 1983, and 1985. 20 C.F.R. § 404.988(b) provides that a prior decision may be reopened "within four years of the date of the notice of the initial determination if we find good cause, as defined in 404.989, to reopen the case." The Secretary's decision not to reopen a prior determination is not a final decision and is reviewable only if a colorable constitutional claim is raised.[12] Thus, this circuit has held that it has jurisdiction to review the Secretary's decision not to reopen a prior application only where (1) a colorable constitutional claim is raised; or (2) the decision is reconsidered to any extent at any administrative level.[13]

■ Appellant does not contend that the Secretary reconsidered the merits of one of his prior claims. Rather, appellant argues that if the Secretary had followed the applicable case law or regulations when it originally reviewed his applications, he would have been found disabled. He contends that the Secretary's failure to follow the applicable case law resulted in a denial of due process. However, this mere allegation, without any supporting evidence of the Secretary's failure to follow applicable case law or regulations is not sufficient to raise a constitutional claim. There simply is no evidence that the Secretary did not follow applicable regulations or other law in denying appellant's prior applications.

■ Finally, Jones argues that the Secretary denied him due process when the ALJ failed to notify his paralegal repre-

---

7. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir.1985), *aff'd on other grounds, Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

8. 784 F.2d 1073 (11th Cir.1986).

9. *Id.* at 1076 (emphasis in original).

10. *Id.*

11. R1–2–24 (emphasis added).

12. *Califano v. Sanders*, 430 U.S. 99, 107–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977); *Holland v. Heckler*, 764 F.2d 1560, 1561–62 (11th Cir.1985).

13. *Hall v. Bowen*, 840 F.2d 777, 778 (11th Cir. 1987).

sentative of the right to cross-examine the physicians who examined him after the hearing. Appellant, in effect, asks this court to overrule its decision in *Hudson v. Heckler.*[14] There, we held that the Secretary has no duty to inform a "paralegal representative of her client's right to cross-examine" a doctor who submits a post-hearing report. A due process violation occurs only when a claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports.[15] Mr. Jones was not denied the opportunity to cross examine the consultative physicians. His representative's failure to cross-examine Drs. Sparks and Khoo constituted a waiver of that right and no due process violation occurred.[16]

AFFIRMED.

---

**14.** 755 F.2d 781, 785 (11th Cir.1985), *aff'd on other grounds, Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

**15.** *Id.* at 784–85.

**16.** *Id.* at 785. In support of his argument, appellant cites the third circuit's decision in *Wallace v. Bowen,* 869 F.2d 187 (3d Cir.1989), in which the court held that the ALJ erred in not affording the claimant the right to cross-examine the authors of post-hearing reports adverse to him. *Id.* at 193. Appellant fails to note that in *Wallace,* the claimant's representative objected to the ALJ's use of the reports on the ground that

he had requested but was denied the opportunity to cross-examine their authors. *Id.* While the court found that under these circumstances, the claimant's representative had not waived the right to cross-examine, the court explicitly distinguished that case from *Hudson,* in which no such objection or request was made. In the instant case, appellant's representative submitted comments in response to the post-hearing reports but did not request an opportunity to cross-examine their authors; neither did he object to their use.