[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**November 29, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 05-12459
Non-Argument Calendar

_____

D. C. Docket No. 04-00410-CV-P-L

LELAND D. GIBBS,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(November 29, 2005)

Before BARKETT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Leland D. Gibbs appeals the district court's order affirming the Social

Security Administration's ("SSA's") denial of his applications for disability

insurance benefits ("DIB"), 42 U.S.C. § 405(g), and supplemental security income ("SSI"), 1383(c)(3). In his applications, Gibbs claimed that he became disabled on October 15, 1996, due to poor circulation in his legs, back pain, headaches, and "bad nerves and depression." When the denial of his applications initially was reviewed by the district court, the court remanded to the SSA for further consideration of Gibbs's severe mental impairments. At a hearing before the Administrative Law Judge ("ALJ"), a vocational expert ("VE") testified that: (1) Gibbs's past position as a security guard was classified as semi-skilled work, requiring "light" exertion; (2) without considering any physical limitations, an individual with a personality disorder and depression, whose depression could be controlled with medication, could perform the job of a security guard; and (3) if the depression was marked and severe, where the person would not have the abilities to have clear thought and to function, he could not do that job.

In its final decision issued on November 19, 2003, the ALJ determined that Gibbs did not have a severe physical impairment during the period in question. Specifically noting that he had read the testimony and the statements made by the lay witnesses and had "given them appropriate consideration in the overall determination of this case," the ALJ discussed the medical evidence of Gibbs's back pain, diabetes, hand tremors, headaches, leg swelling, and obesity. The ALJ

2

noted that, although an examining physician, Dr. Gregory Evans, appeared to be offering an opinion that Gibbs was disabled, he would not assign significant evidentiary weight to the opinion because: (1) the issue of disability was one for the SSA; and (2) none of Dr. Evans's records indicated that Gibbs was limited in his ability to perform basic work activities.

Next, the ALJ discussed the evidence pertaining to Gibbs's mental impairments and concluded that Gibbs possessed the severe impairments of a dysthymic disorder and a personality disorder, but found that, even considering his impairments singly and in combination, they did not meet, or equal, the medical criteria set forth in Listings 12.04 (affective disorder) or 12.08 (personality disorder). The ALJ concluded that, "after considering all of the evidence of record," Gibbs had the Residual Functional Capacity ("RFC") to perform work at all exertional levels and had only mild limitations in his abilities to: (1) maintain activities of daily living, since he could care for his personal needs without assistance, do household chores, and drive; (2) function socially, since he attended church on a regular basis, questioning whether Gibbs's bizarre behavior was willful, since he was able to respond appropriately during his group therapy sessions; and (3) maintain concentration, persistence, or pace, since Gibbs testified that he reads, watches television for several hours per day, and drives, all of which

3

require an elevated level of concentration. The ALJ found that there was no evidence that Gibbs had suffered any episodes of deterioration or decomposition. He specifically noted that, in making this determination, he had "assigned the appropriate evidentiary weight" to the information provided by Gibbs's physician and social worker at Mobile Medical Health Center ("MMHC").

The ALJ next determined that, based on the VE's testimony, Gibbs had the ability to perform his past relevant work as a security guard. The ALJ concluded:

> After carefully considering all of the evidence, including the hearing testimony and the effects of [Gibbs's] impairments, the undersigned finds that [Gibbs] is not disabled in that he has been physically and mentally capable of performing his past relevant work as a security guard . . .

Gibbs then submitted, before the Appeals Council ("AC"), a supplemental affidavit, dated March 4, 2004, from his brother, Adrian Gibbs, stating that: (1) on February 2, 2004, Gibbs's mother was placed in a nursing home, leaving Gibbs living alone; (2) upon visiting Gibbs, on February 28, 2004, Adrian found that the house was infested with roaches and mice and was in a "generally unhealthy condition"; (3) when Adrian took Gibbs to Catholic Social Services, Gibbs had trouble carrying on a conversation, "wet[] himself," had trouble staying awake, and was drooling; (4) Gibbs lost his temper when Adrian tried to keep him from eating candy, although he was still taking medication for his diabetes; (5) Gibbs had

4

trouble feeding himself and would choke on and vomit food; (6) Gibbs had overdrawn his mother's checking account; and (7) Adrian was trying to convince Gibbs to move to a group home, since he had concerns about Gibbs's ability to live by himself safely. The AC denied review, noting that Adrian's affidavit indicated that Gibbs's condition was deteriorating, but there was no medical documentation, and suggesting that Gibbs consider filing a new application for SSI benefits.

On June 2, 2004, Gibbs requested, from the AC, an extension of time to supplement the record, stating that: (1) he had been charged, in the U.S. District Court for the District of South Carolina, with willful failure to pay child support; and (2) the case recently had been dismissed. The AC acknowledged the letter, but noted that, since Gibbs had filed an appeal in the district court, it did not have jurisdiction over the matter. The district court affirmed the ALJ's decision.

## I. The ALJ's decision

On appeal, Gibbs argues that substantial evidence does not support the ALJ's conclusion that he was not disabled, in light of the ALJ's failure to consider the record as a whole. He argues that the record showed that he suffered from numerous, permanent, mental and physical impairments and contends that the ALJ erred by not considering his physical and mental impairments in combination. He points out also that the ALJ: (1) ignored references in the record to Gibbs's many

5

conditions; (2) belittled lay testimony; (3) implied that Gibbs's back had healed; (4) ignored a treating physician's recommendation that Gibbs needed a neurological examination; (5) failed to discuss evidence that Gibbs's IQ was 60, which, under Listing 12.05 (mental retardation), established that Gibbs was disabled; (6) rejected mental health records prepared by a social worker; (7) failed to supplement the record with Gibbs's psychiatric hospitalization records; and (8) failed to develop evidence of the side effects of Gibbs's medications. Gibbs further argues that the ALJ erred by ignoring the VE's testimony that, if Gibbs suffered from severe mental impairments, he would be unable to work, essentially ignoring the district court's mandate, in remanding the case to the ALJ, that Gibbs's mental impairments were to be considered severe. Finally, Gibbs argues that the government is estopped from arguing that he was not disabled because the issue was determined in his favor by the U.S. District Court of South Carolina, when it dismissed his ex-wife's claim against him for child support, based on his disability.

We review a social security case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. Lewis v. Callahand, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is defined as more than a scintilla, i.e., evidence that

6

must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The Social Security Regulations outline a five-step sequential evaluation process used for determining whether a claimant is disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). First, the claimant must prove that he has been unable to engage in substantial gainful activity. Id. Second, the claimant must prove that he suffers from a severe impairment or combination of impairments. Id. In step three, if the claimant can prove that his impairment meets or equals a listed impairment, he automatically is deemed disabled. Id. If his impairment does not meet or equal a listed impairment, he must proceed to step four and prove that he is incapable of performing his past relevant work. Id. Finally, at step five, the burden shifts to the SSA "to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform," and, if the SSA meets its burden, the claimant then must prove that he cannot perform those jobs. Id. An impairment or combination of impairments is not severe if it "does not significantly limit [the claimant's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing,

hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." 20 CFR § 404.1521(a), (b).

"Where a claimant has alleged several impairments, the [Commissioner] has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Jones v. Dept. of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). Indeed, an ALJ is required to address the "degree of impairment caused by the combination of physical and mental medical problems." Strickland v. Harris, 615 F.2d 1103, 1110 (5th Cir. 1980). We have held that the ALJ properly considered the claimant's impairments in combination when he stated that, "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months." Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

We find that substantial evidence supports the ALJ's conclusion that Gibbs's physical impairments, even considered in combination, were not severe, because,

although the record shows that, over time, Gibbs complained of poor circulation in his legs, headaches, diabetes, insomnia, impotence, hand tremors, and gout, there is no evidence that these impairments interfered with his ability to do basic work activities or that he continuously sought treatment for his physical impairments. Substantial evidence also supports the ALJ's finding that, although Gibbs's mental impairments were severe, he retained the RFC to perform his past relevant work as a security guard. The ALJ was permitted to rely on the VE's testimony that a person with a personality disorder and depression, whose depression did not cause marked limitations in his ability to think, could perform the job of a security guard, since the hypothetical was reflective of the medical evidence as to Gibbs's impairments. While it is clear that, in determining their severity, the ALJ analyzed Gibbs's physical and mental impairments separately, nevertheless, a careful review of the record shows that, in making his final determination that Gibbs could perform his past relevant work, the ALJ properly considered Gibbs's physical and mental impairments in combination. Moreover, the ALJ properly considered all of the evidence in this case, and the ALJ's decision was entirely consistent with the district court's order on remand, since he concluded that Gibbs possessed the severe mental impairments of a dysthymic disorder and a personality disorder. Finally, even assuming that the South Carolina district court had determined that

9

Gibbs was disabled, in the context of a child support claim, such determination would not be binding in the instant case. See 20 C.F.R. § 404.1504.

## II: Supplemental Evidence

Gibbs further contends that the AC erred by finding that his supplemental affidavit, which had not been before the ALJ, indicated that his condition was deteriorating, since there was no medical evidence that his condition had deteriorated. He argues that the affidavit did not show that his condition had deteriorated, but instead, showed that the severity of his condition had become apparent only when he stopped receiving care from his mother. He argues that the AC's suggestion, that he re-apply for benefits, showed a misunderstanding of the matter, contending that the affidavit should have been considered.

We review whether remand is necessary de novo. Hyde v. Bowen, 823 F.2d 456, 458-59 (11th Cir. 1987). To be entitled to remand to the SSA for consideration of newly discovered evidence, the claimant must show that "(1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable probability exists that the new evidence would change the administrative result, and (3) good cause exists for the [claimant's] failure to submit the evidence at the appropriate administrative level." See Falge, 150 F.3d at 1323. The new evidence must relate to the time period on or before the date of the ALJ's decision. See 20

10

C.F.R. § 404.970(b). Because evidence submitted to the AC concerned Gibbs's condition after the ALJ's final decision, it was not material to the decision, and remand is not required.

**AFFIRMED.**