[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 2, 2006
THOMAS K. KAHN
CLERK

No. 06-11550
Non-Argument Calendar
_____

D. C. Docket No. 04-00382-CV-WDO-5

PATRICIA EAST,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(October 2, 2006)

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Patricia East appeals from the district court's order affirming the

Commissioner's denial of her application for supplemental security income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3). Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, we affirm.

## I. BACKGROUND

On October 31, 2001, East applied for SSI benefits. East alleged that, as of September 30, 2001,[1] she was disabled due to her physical impairments of back injuries, asthma and seizures, and her mental impairments of bipolar disorder, depression, suicide attempts and a learning disability. The Commissioner denied East's application initially and upon reconsideration. East then requested and received a hearing before an ALJ.

During the hearing, the ALJ heard testimony from East and from a vocational expert ("VE"). The ALJ also considered East's extensive medical records and various evaluations completed by both East's treating sources and consulting doctors and psychologists.

After reviewing the evidence, the ALJ concluded that East was not disabled. The ALJ found that, although East's asthma, degenerative disc disease and bipolar disorder were severe impairments that precluded East from performing her past relevant work, East retained the residual functional capacity to perform light

---

[1]East originally alleged an onset date of November 1999, but later amended her onset date to September 30, 2001.

simple work.  Based on the VE's testimony, the ALJ found that such light work existed at the national and regional level.  The ALJ discounted the credibility of East's treating physician and treating psychiatrist as well as East's hearing testimony regarding her subjective complaints.

The Appeal Counsel denied East's request for review, making the ALJ's decision the final decision of the Commissioner.  East appealed to the district court.  The magistrate judge issued a report and recommendation ("R&R"), recommending that the district court affirm the Commissioner's decision.  Over East's objections, the district court adopted the R&R and affirmed the Commissioner's decision.  East appealed to this Court.[2]

## II.  DISCUSSION

### A.  East's Borderline Personality Disorder Diagnosis

East argues that the ALJ erred by failing to consider her borderline personality disorder diagnosis.[3]  We disagree.

---

[2]We review a Commissioner's denial of benefits to determine whether the decision is supported by substantial evidence in the record and whether the correct legal standard was applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Substantial evidence is more than a scintilla, but less than a preponderance.  It is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

[3]East also argues that the ALJ erred in failing to consider the consulting psychologist's report by Dr. Priscilla Wilson. Ph.D.  However, any error in failing to address this report explicitly in the ALJ's determination was harmless given that Dr. Wilson's observations in the

3

East did not list borderline personality disorder as one of her impairments on her application or in any other paperwork she completed during the administrative process. Furthermore, the record contains no evidence of the effect that East's borderline personality disorder had on her ability to perform basic work activities. She did not describe the effect borderline personality disorder had on her abilities in either her daily living questionnaire or her hearing testimony. None of her doctors completed any paperwork evaluating how East's borderline personality disorder limited her abilities. Indeed, a description of the symptoms of this mental disorder cannot even be found in the record. Instead, East's medical records contain brief references to either historical or "by report" borderline personality disorder diagnoses, most of which occurred prior to East's alleged onset date.[4] In

report were consistent with the ALJ's determination. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (finding harmless ALJ's mischaracterization of claimant's past work because the error did not contradict the ALJ's ultimate findings).

East also complains that the ALJ failed explicitly to accept or reject the daily activities questionnaire completed by her mother, Linda Boggs. Because Boggs's statements in the questionnaire duplicated and corroborated East's testimony, which the ALJ explicitly found not credible, it is "obvious" that the ALJ implicitly rejected Boggs's statements. See Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) ("[T]his circuit does not require an explicit finding as to credibility," but rather findings may be by implication if they are "obvious to the reviewing court"). Because Boggs's credibility was not critical to the outcome of the case, the lack of an explicit credibility finding as to her questionnaire does not provide a basis for remand. See Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

[4]For example, on October 23, 2001, Dr. Kathleen Klotz, M.D., noted "1997 Bipolar disorder and personality disorder" in the "Past Medical History" portion of her treatment notes. After reporting to the emergency room, East was seen by Dr. Klotz for frequent headaches. Dr. Klotz prescribed Imitrex and ordered various tests, including an MRI of East's brain. In sum, Dr. Klotz was not treating East for any alleged mental impairments, and it does not appear she

fact, it does not appear from the record that any of East's treating physicians, after her alleged onset date, independently diagnosed East with borderline personality disorder. Instead, since East's alleged onset date, her primary diagnoses of mental impairments have been depression and bipolar disorder.

East has the burden to present evidence of her impairments and their severity. See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). Although the ALJ must consider all the impairments the claimant alleges in determining whether the claimant is disabled, see Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991), the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant. Under the circumstances, we cannot say the district court committed reversible error in failing to consider East's borderline personality disorder.

## B.    Treating Physicians' Opinions

---

diagnosed East with borderline personality disorder. Instead, it appears Dr. Klotz was merely noting East's historical diagnosis of borderline personality disorder as reported by East.

Another example appears on an August 10, 2003 referral form, which indicates that East had been referred to the Oconee Center for individual counseling. The form states that the Oconee Center was unable to reach East at the number listed on the referral. They then sent East a letter informing her how to contact them to set up an initial meeting. The "Diagnoses" section of the referral form lists bipolar disorder under "Axis I" and borderline personality disorder under "Axis II." Given that East had not yet appeared for an initial meeting, this form does not appear to constitute a diagnosis of borderline personality disorder by the staff at the Oconee Center, but merely a report of East's historical diagnosis of borderline personality disorder.

East also argues that the ALJ erred in rejecting the medical opinions of Dr. Robert Hartmann, M.D., East's treating psychiatrist, and Dr. Alice House, M.D., East's treating physician. These treating physicians' opinions must be given substantial and considerable weight unless "good cause" is shown to the contrary. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

"This Court has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When the ALJ does not give the treating physician's opinion controlling weight, the ALJ applies other factors for determining whether a claimant is "disabled," such as the length of treatment, the frequency of examination, the nature and extent of the relationship, as well as the supportability of the opinion, its consistency with other evidence and the specialization of the physician. See 20 C.F.R. § 416.927(d)(2)-(6). If the ALJ does not give a treating physician's opinion controlling weight, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.

6

1997); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion).

The ALJ provided specific "good cause" reasons for rejecting these opinions. As to Dr. Hartmann, the ALJ explained that she "reject[ed] Dr. Hartman[n]'s conclusions, as they [were] inconsistent with his own treatment notes," he had only briefly treated East and "his records show improvement in symptoms with medication." Thus, the ALJ gave specific reasons for her decision to give less weight to Dr. Hartmann's opinion and considered the factors in 20 C.F.R. § 416.927.

Furthermore, the ALJ's reasons for rejecting Dr. Hartmann's opinion are supported by substantial evidence because his opinion was inconsistent with his own treatment notes regarding East. When East's psychological treatment with Dr. Hartmann began in May 2003, Dr. Hartmann initially noted "mild depression," and in August 2003 found East to be "[n]ot clearly manic or depressed" despite the fact that she had not been taking her medications for a month and a half. Additionally, East self-reported that her medications had been working in September 2003, yet when Dr. Hartmann assessed East's ability to work in November 2003, he concluded that she had either seriously limited ability to function or no useful ability to function in all but one (maintain personal appearance) work-related

7

activity. In addition, the progress notes of the staff at the Oconee Center, including Dr. Hartmann, indicate that East's symptoms improved when she faithfully took her medications. Moreover, based on East's hearing testimony, Dr. Hartmann had seen East only six times over six months and for only 15 minutes each visit before he completed his medical assessment containing his opinion.[5]

As to Dr. House, the ALJ expressly noted that she "afforded little evidentiary weight to Dr. House's limitations" because they were "out of proportion to the objective medical findings," based on Dr. House's own findings. The ALJ also acknowledged Dr. House's diagnosis of fibromyalgia, but found it to be non-severe based on the fact that there was "little evidence in the file to confirm the diagnosis." These reasons are supported by substantial evidence. While Dr. House concluded in her October 21, 2003 Pain Evaluation that East's complaints of pain were credible and could prevent her from working, she concluded in her January 15, 2004 Physical Capabilities Evaluation that East's pain allegations were "greater than [the] findings" and referred to East's x-ray report. Notably, January 2002 medical imaging of East's lumbar spine revealed no subluxation or fracture

---

[5]On appeal East also argues that the ALJ erred by failing to recontact Dr. Hartmann or Dr. House pursuant to 20 C.F.R. § 404.1512(e) prior to rejecting their opinions. We do not consider this argument, which was not timely raised before either the Appeals Council or the district court. See Stewart v. Dep't of Health & Human Servs., 26 F.3d 115, 115 (11th Cir. 1994) (noting that issues raised for the first time on appeal are not addressed).

and only "[e]arly minimal spondylosis" between two vertebra. July 2002 x-rays of East's lumbar spine and right hip revealed only some disc space narrowing and described East's complaints as "unexplained clinical symptoms."[6]

Dr. House also noted on her Physical Capabilities Evaluation that East's fibromyalgia "has no known clinical findings." Dr. House's treatment notes indicate that on November 24, 2003, she made an appointment for East with a rheumatologist to follow up on East's fibromyalgia, but no other medical records documenting the results of that follow up can be found in the record.

Thus, the ALJ gave adequate reasons for discrediting both doctors' opinions, and her reasons were supported by substantial evidence.

## C. East's Subjective Complaints

Finally, East contends that the ALJ erred in finding that East lacked credibility with regard to her physical complaints.

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard

---

[6]East argues that the ALJ "misunderstood" her back impairment and emphasizes her 1996 MRI, which she contends the ALJ ignored. This MRI, which was performed almost five years before East's alleged onset date, found a "disc protrusion with mild resultant spinal stenosis," but "no evidence of direct impingement or displacement of adjacent nerve roots." Under the circumstances, the ALJ properly concluded that East's back condition was severe, just not so severe as to preclude her from all types of jobs in a national economy. This conclusion is supported by substantial evidence.

requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Id. In evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). Furthermore, "[i]f the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires . . . that the testimony be accepted as true." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Here, the ALJ concluded that East's subjective complaints were not credible for the following reasons: (1) tests performed by a number of specialists had been negative; (2) physical examiners had noted that East's presentation was functional and referred her to psychiatrists for further evaluation; (3) C.L. Coster, D.O, the consulting examiner, strongly suggested that East was faking during an examination to determine her range of motion; (4) East's degenerative disk disease was mild, and no objective medical evidence supported the degree of pain and limitation East claimed; and (5) although East alleged that she could not afford her

10

prescription medications, she used her children's child support to buy up to 45 packs of cigarettes per month. These reasons for discrediting East are supported by substantial evidence in the record. Indeed, East does not argue that they are not.

Instead, East contends that the ALJ improperly applied the pain standard by failing to address whether East had impairments that could reasonably be expected to produce the type of pain East alleged. We disagree. The ALJ specifically stated that she was required to "consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 416.929 and Social Security Ruling 96-7p." It is clear from the ALJ's opinion as a whole that, although East had impairments that could reasonably be expected to produce the type of pain and other symptoms East alleged, the ALJ did not believe East's testimony as to the severity of her pain and other symptoms, i.e., their intensity, persistence and functionally limiting effects. See Foote, 67 F.3d at 1561 (explaining that once an impairment meeting the pain standard is established, the ALJ must consider evidence "about the intensity, persistence, and functionally limiting effects of pain or other symptoms" in addition to "the medical signs and laboratory findings in deciding the issue of disability"); see also 20 C.F.R. § 416.929(c) ("When the medical signs or laboratory findings show that you have a

11

medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work . . . .").  We cannot say that the ALJ misapplied the pain standard.[7]

## III. CONCLUSION

For all the foregoing reasons, we affirm the ALJ's determination that East was not disabled.

**AFFIRMED.**

---

[7]East also raises a number of other arguments, but they lack merit and do not warrant further discussion.