[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14046
Non-Argument Calendar

_____

D.C. Docket No. 5:16-cv-00501-WTH-PRL

VEATTA O. CARTER,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 12, 2018)

Before MARCUS, JULIES CARNES and HULL, Circuit Judges.

PER CURIAM:

Veatta Carter appeals the affirmance of the decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her applications for

a period of disability and disability insurance benefits ("DIB"), and supplemental

security income ("SSI"), 42 U.S.C. §§ 405(g), 1383(c)(3).  Carter argues that: (1) based on the substantial evidence, the ALJ committed error in determining that she had the residual functional capacity ("RFC") to perform sedentary work; (2) the ALJ failed to consider the vocational expert ("VE") testimony as to her need to elevate her legs and her cognitive abilities; and (3) the ALJ improperly gave little weight to two forms by Dr. K. N. Reddy and Nurse Baker, where they opined that she could not work.  After thorough review, we affirm.

We review the ALJ's decision for substantial evidence, but the ALJ's application of legal principles de novo.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, make credibility determinations, or re-weigh the evidence.  Id.

The social security regulations outline a five-step, sequential evaluation process to decide whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(4). The ALJ must evaluate whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the severe impairment meets or equals an impairment in the Listing of Impairments; (4) the claimant has the RFC to perform past relevant work; and (5) in light of the claimant's RFC, age, education, and work experience, there are other jobs the claimant can perform. Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§

2

404.1520(a)(4), 416.920(a)(4).   A claimant's RFC is the most she can still do despite her limitations and is based on an evaluation of all the relevant evidence. See 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3).   If the ALJ determines that the claimant is not disabled at any step of the evaluation process, the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

If a claimant alleges several impairments, the Commissioner must consider the impairments in combination to decide whether the combined impairments render her disabled.  Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).  This duty applies even when the impairments considered separately are not severe.  Hudson v. Heckler, 755 F.2d 781, 785 n.2 (11th Cir. 1985).  An ALJ's statement that the claimant did not have an impairment or combination of impairments that rendered her disabled constitutes evidence that he considered the combined effects of her impairments.  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).

In performing the five-step evaluation process, an examiner who concludes that a claimant is unable to do past relevant work must then proceed to the "final step of the evaluation process to determine whether in light of '[RFC],' age, education, and work experience the claimant can perform other work."  Id. at 1227. The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by use of a vocational expert.  Winschel v. Comm'r

3

of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). "[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Id. (quotations omitted). "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1270 (11th Cir. 2007) (quotation and citation omitted). The ALJ need not include findings in the hypothetical that the ALJ found to be unsupported. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

"Medical opinions" are defined as statements from physicians or other acceptable medical sources "that reflect judgments about the nature and severity of [a patient's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). We've found "good cause" to exist when: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Id.

Carter focuses her appeal on problems with her veins and legs, her cognitive abilities, and her IQ. On the record before us, however, substantial evidence

4

supports the ALJ's RFC finding for a reduced range of sedentary work and the ultimate finding that in spite of her alleged difficulties, she was not disabled. As for her vein and leg problems, the record reveals that her leg pain and swelling had improved after receiving several vein ablation treatments. Doctors repeatedly told her to exercise, walk, lose weight, and wear compression stockings or hose, which were conservative treatments. Overall, her exams were normal, showing some edema in the legs, but the ability to walk. The doctors' advice to exercise contradicted her arguments that she cannot walk or stand while at a job. Her reported activities of daily living contradicted her arguments as well, since she said that she cared for her children, did chores, cared for herself, and went to the gym.

Moreover, nothing in the record suggests that her IQ or cognitive functioning is so low that she cannot perform any job, even though the record reflects that she has learning disabilities. The doctor who evaluated her in 2006 did not note that she could not work, only that it may be difficult for her to pass a test that would allow her to continue working in childcare. As for Carter's argument that her illiteracy prevents her from doing any work, she testified during the ALJ hearing that she read the Bible, which contradicts this argument. Illiteracy "means the inability to read or write," and an individual is considered illiterate if she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign . . . her name[.]" 20 C.F.R. §§ 404.1564(b)(1),

416.964(b)(1).  The records of her learning disability and IQ testing do not reflect that she was illiterate, but rather show that she had difficulties reading and writing, as well as borderline intellectual functioning.  Thus, contrary to Carter's argument, the record does not compel the conclusion that she was illiterate or unable to perform the educational requirements of the jobs.

The ALJ also demonstrated he had considered all of Carter's impairments, by expressly finding she did not have an "impairment or combination of impairments" that met or equaled the severity of a listed impairment.  The ALJ added that he considered her impairments in combination, the "entire record," and "all symptoms" in evaluating her RFC, and he discussed her subjective statements and the relevant medical evidence.  On this record, substantial evidence supported the ALJ's determination of the RFC for a reduced range of sedentary work.

The ALJ also articulated good reasons, supported by substantial evidence, for his assessment of the weight due to the medical opinion evidence of her treating physicians, Dr. K.N. Reddy and Nurse Baker.  As the ALJ explained, opinions that Carter could simply not work were conclusory, and neither specified any reason for why she could not work.  In addition, they were inconsistent with the record as a whole, since doctors repeatedly told Carter to exercise and use conservative treatments.  For instance, while Dr. Nagender Reddy recommended leg elevation in combination with other conservative treatment, such as

compression stockings or hose, he did not order that she keep her legs elevated during the day; notably, he never said that Carter had to elevate her legs in order to function nor that she had to refrain from sitting or standing unless she periodically elevated her legs. Dr. K. N. Reddy and Nurse Baker's opinions were also inconsistent with Dr. K. N. Reddy's own treatment notes, especially where he recommended that Carter walk, exercise, and continue with vein treatments.  Thus, we reject Carter's arguments that the ALJ improperly gave little weight to two forms by Dr. K. N. Reddy and Nurse Baker.

Finally, we are unpersuaded by Carter's claim that the ALJ improperly relied on the VE's testimony.  Carter says that the ALJ failed to consider the VE testimony about her need to elevate her legs, but the record does not support her alleged need to keep her feet elevated during the day.  It is true that the VE testified that, if a claimant had to elevate her feet with the feet extended while at work, that "no work" would be available.  But the only pieces of evidence that mentioned elevating her feet were the functional reports by either Dr. K. N. Reddy or Nurse Baker -- and as we already observed, those opinions, where Dr. K. N. Reddy and/or Nurse Baker opined that Carter could never work, were conclusory and did not indicate why she was unable to work.  Nor has Carter explained how the ALJ's hypothetical question failed to accommodate her moderate limitations in concentration, persistence, or pace or even alleged that the ALJ's hypothetical did

7

not include all her non-exertional limitations. Thus, the ALJ's hypothetical question sufficed to accommodate Carter's limitations in concentration, persistence, or pace.

As for Carter's argument on appeal that the VE's testimony about her cognitive abilities did not comport with the Dictionary of Occupational Titles ("DOT"), it is not supported by any evidence. The VE did not say that any of the example jobs required a certain IQ or reading level, and the ALJ found that the VE's testimony was consistent with the DOT. Furthermore, the ALJ asked the VE about simple and unskilled or low semiskilled work, and the VE explained that there were jobs available for that level of skill with Carter's other physical limitations. Thus, the VE's testimony provided substantial evidence to support the ALJ's conclusion that Carter could perform other work and was not disabled.

In short, because there was relevant evidence that a reasonable person would accept as adequate to support the conclusions that Carter's difficulties with her legs, veins, IQ and cognitive abilities were not disabling, and that she had an RFC to perform sedentary work, we can find no error in the ALJ's decision. See Moore, 405 F.3d at 1211. Accordingly, we affirm the Commissioner's decision denying DIB and SSI.

**AFFIRMED**.

8