[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13826
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-00840-SLB

SUSAN HERRON,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama - Jasper
_____

(May 6, 2016)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Susan Herron appeals the district court's order affirming the denial of her application for supplemental security income ("SSI"), 42 U.S.C. §§ 405(g), 1383(c)(3).  After review, we affirm.

## I.  BACKGROUND FACTS

Herron began experiencing back and neck pain after she was involved in a car accident in June 2000.  In January 2001, Herron underwent a cervical discectomy and fusion, but continued to experience chronic pain for which she took high doses of OxyContin.  In April 2010, Herron began treatment for chronic pain in her back that radiated to her right leg, and a spine x-ray revealed mild degenerative disc disease and mild facet degenerative joint disease at Herron's L4-5 and L5-S1 vertebrae.

In October 2010, Herron filed an application for SSI alleging a disability onset date of September 11, 2010 due to her back pain, neck pain, and depression.  In June 2012, Herron and a vocational expert testified at a hearing before an Administrative Law Judge ("ALJ").  Afterward, the ALJ denied Herron's application.  The ALJ found that: (1) Herron had the severe impairments of degenerative disc disease, polyarthralgia (i.e., joint pain), chronic obstructive pulmonary disease, depression, and benzodiazepine and opiate dependence; (2) Herron could not perform her past relevant work; (3) but Herron had the residual functional capacity ("RFC") to perform unskilled light work with a sit/stand

option.  Based on the VE's testimony, the ALJ further found that there were a significant number of jobs in the national economy that Herron could perform, including bench assembler, sorter, and bakery line attendant.  Accordingly, the ALJ found that Herron was not disabled.  The Appeals Council denied Herron's request for review, making the ALJ's decision the final decision of the Commissioner.  See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

## II.  DISCUSSION

### A.    General Principles

To determine whether a claimant is disabled, the ALJ uses a five-step, sequential evaluation process.  See 20 C.F.R. §§ 416.920(a)(1), (4); 416.905. Using this process, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.  See 20 C.F.R. §§ 920(a)(4) & (g), 416.960(c).  The claimant bears the burden to prove the first four steps.  If the claimant does so, the

3

burden shifts to the Commissioner to prove the fifth step.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).[1]

On appeal, Herron raises several related arguments with respect to the ALJ's determination, at steps four and five, that Herron had the RFC to perform light work with a sit/stand option.  Specifically, Herron argues that the ALJ erred by: (1) disregarding objective medical tests and findings that substantiated her subjective complaints of back and neck pain and her treating physician's testimony about the severity of her orthopedic issues; (2) failing to consider her impairments in combination; (3) failing to accord significant weight to, and improperly discrediting, her treating physician's opinion that Herron "may have early signs of ankylosing spondylitis"; and (4) partially discrediting Herron's own statements concerning the intensity, persistence, and limiting effects of her pain.

In determining at steps four and five whether a claimant can perform her past relevant work or other work, the ALJ must determine the claimant's RFC by considering all relevant medical and other evidence.  Phillips v. Barnhart, 357 F.3d 1232, 1238-39 (11th Cir. 2004); see also 20 C.F.R. §§ 416.920(e), 416.945(a)(3). The ALJ must explain the weight given to "obviously probative exhibits."  Cowart

---

[1]We review de novo the legal principles underlying the Commissioner's final decision, but review "the resulting decision only to determine whether it is supported by substantial evidence."  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id.

v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  However, there is no "rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision . . . is not a broad rejection" that leaves this Court with insufficient information to conclude that the ALJ considered the claimant's medical condition as a whole.  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

In assessing RFC, the ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  A treating physician's medical opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted); see also 20 C.F.R. § 416.927(c)(2) (stating that the treating physician's opinion that is well-supported and not inconsistent with other evidence receives "controlling weight").  The ALJ must "clearly articulate the reasons for giving less weight" to a treating physician's opinion.  See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. § 416.927(c)(2) (requiring the ALJ to give "good reasons" for not giving controlling weight to the treating physician's opinion).

When the claimant attempts to establish disability through her own testimony about her pain or other subjective symptoms, a three-part "pain

standard" applies.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002); SSR 96-7p, 62 Fed. Reg. 34483 (July 2, 1996).  The pain standard requires the claimant to show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise" to the claimed symptoms.  Wilson, 284 F.3d at 1225; see also 20 C.F.R. § 416.929(a)-(b).  If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. § 416.929(b)-(c).  At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by medical sources, and other evidence of how the pain affects the claimant's daily activities and ability to work.  Id. § 416.929(c).  If the ALJ decides to discredit the claimant's testimony about her symptoms, the ALJ must adequately explain the reason for doing so.  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

**B.     The ALJ's RFC Findings**

The ALJ found that Herron had the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b) except the claimant would need a sit/stand option."[2]  In so doing, the ALJ applied the pain standard and found that Herron's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that Herron's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC finding.  The ALJ stated that Herron "estimated that she is able to sit continuously for fifteen minutes, stand ten minutes, and walk fifteen minutes," that "she lays down two to three hours" on an average day, and "she is able to lift no more than ten pounds."[3]  The ALJ found that Herron's "allegations of severe pain and functional limitations related to back and neck pain [are] not fully supported by the evidence."

The ALJ reviewed Herron's medical history as to her back and neck pain, noting, inter alia, that: (1) Herron's "cervical fusion with bone graft and plating in January 2001 . . . was successful and she fully recovered despite failure to

---

[2]A claimant's RFC is a medical assessment of what she can do in a work setting despite any mental, physical, or environmental limitations caused by her impairments and related symptoms.  20 C.F.R. § 416.945(a).  With respect to physical limitations, the ALJ assesses the claimant's ability to do things like sit, stand, walk, lift, carry, push or pull.  Id. § 416.945(b).  Light work, as defined in the regulations, involves lifting no more than twenty pounds at a time, with frequent lifting and carrying of objects weighing up to ten pounds and a good deal of walking, standing or sitting and manipulating of arm and leg controls.  Id. § 416.967(b).

[3]Because Herron does not challenge the ALJ's mental RFC findings related to her depression, we do not discuss them.

complete physical therapy"; (2) Herron did not seek further treatment for back and neck pain until April 2010; (3) Herron's neurologist, Dr. Salah Uddin, performed a physical examination that found "tenderness . . .over [Herron's] SI joints and along the paraspinal muscles from the L4 level to S2," and that "[s]traight leg raises were positive bilaterally at forty-five degrees"; (4) Dr. Uddin diagnosed chronic low back pain with radiation into Herron's right hip and leg, prescribed medication which Herron reported helped, ordered x-rays that "showed mild degenerative disc disease at L4-5 and L5-SI with mild facet degenerative joint disease at [those] levels," and a nerve conduction study that "did not show radiculopathy and was noted to be normal"; and (5) Herron's treating physician since June 2010, Dr. Scott Twilley, confirmed objective findings of back, neck and extremities pain with range of motion and diagnosed chronic musculoskeletal pain and degenerative disc disease, and his treatment notes indicated that Herron's "pain is controlled with medication."

The ALJ noted Dr. Twilley's statement in his deposition that Herron "may have early signs of ankylosing spondylitis," but the ALJ rejected this tentative diagnosis because the evidence did not support it.[4]  The ALJ indicated that Dr. Twilley's own treatment notes did not contain "a diagnosis of ankylosing spondylitis, or even a reference to ankylosing spondylitis," but instead referred

---

[4]The parties agree that ankylosing spondylitis is a type of inflammatory disease of the spine that causes pain and stiffness and over time can cause the vertebrae to fuse together.

only to "degenerative disc disease" in Herron's cervical and lumbar spine. The ALJ also pointed to Dr. Uddin's x-ray records that showed only mild degenerative disc and joint disease and did not mention ankylosing spondylitis or the vertebrae fusion that "is usually a symptom[ ] of this impairment." Based "on the evidence as a whole," the ALJ found Herron's testimony about the severity and functional limitations of her back, neck, and leg pain to be only "partially credible."

The ALJ further found that Herron's testimony about her daily activities was "somewhat inconsistent with" Herron's October 2010 function report, in which she stated that she "prepares quick foods, helps take care of her daughter's dogs, occasionally watches her granddaughter, does some house work, and normally shops for groceries once a week . . . ." The ALJ also noted that, although Herron testified that she complied with all treatment recommendations, there was no evidence in the record Herron had participated in the disc decompression therapy or trigger point injections recommended by Dr. Uddin. In sum, the ALJ concluded that Herron's "self-reported limitations [were] not consistent with the medical evidence and she simply allege[d] a greater degree of debilitation than what objective evidence can support."

## C.    Herron's Claims on Appeal

After review, we conclude that the ALJ properly applied the pain standard by finding that Herron had "medically determinable impairments" that "could

reasonably be expected to cause the alleged symptoms." The ALJ then properly evaluated the intensity, persistence and limiting effects of Herron's symptoms and did not err in concluding that Herron had the RFC to perform light work with a sit/stand option and that Herron's statements concerning the intensity, persistence, and limiting effects were "not credible to the extent they were inconsistent with" that RFC assessment. The ALJ also showed good cause for rejecting Dr. Twilley's testimony that Herron "may" be showing early signs of ankylosing spondylitis when the ALJ explained that Dr. Twilley's tentative diagnosis was not supported by either his own medical records or other medical evidence in the record. See Phillips, 357 F.3d at 1240-41; see also Crawford, 363 F.3d at 1159 (concluding ALJ's decision to discredit treating physician's opinion was supported by substantial evidence where the physician's opinion was not supported by his own treatment notes). In addition, the ALJ adequately explained his reasons for partially discrediting Herron's testimony about the limiting effects of her back and neck pain, namely that her testimony was not fully supported by the medical evidence.

Moreover, the ALJ's reasons for rejecting Dr. Twilley's tentative diagnosis and partially discrediting Herron are supported by substantial evidence in the record. Herron's medical records indicate that she suffered from mild degenerative disk and joint disease, that she had range of motion with pain, but that her pain was

10

effectively controlled with medication.  Although Dr. Uddin's treatment recommendations included trigger point injections for tenderness and disc decompression therapy for long-term pain control, there is no evidence Herron ever pursued either of these additional therapies.  Dr. Twilley's treatment notes, including notes of his June 2010 x-rays of Herron's spine, contain no mention of ankylosing spondylitis or spinal fusion unrelated to Herron's 2001 surgery. Instead, Dr. Twilley's x-ray notes are consistent with Dr. Uddin's April 2010 x-ray results, finding degenerative disc disease, bone spurs, some loss of the natural cervical lordosis curve, and some narrowing of disc layers, but no "obvious acute findings."  Further, a November 2010 physical RFC assessment based on Dr. Uddin's treatment records concluded that Herron could: occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds, stand or walk about six hours in an eight-hour workday, sit about six hours an eight-hour workday, and could push or pull in an unlimited manner.

Herron also argues that the ALJ failed to consider her impairments in combination.  See 20 C.F.R. § 416.923 (providing that ALJ will consider the combined effect of the claimant's impairments throughout the disability determination).  This claim is without merit given that the ALJ found, at step three, that Herron did not have an impairment or combination of impairments that met a listed impairment.  See Jones v. Dep't of Health & Human Servs., 941 F.2d 1529,

11

1533 (11th Cir. 1991) (explaining that the ALJ's statement that the claimant did not have an impairment or combination of impairments that met a listed impairment "evidences consideration of the combined effect of [the claimant's] impairments").  Furthermore the ALJ's RFC assessment, at steps four and five, demonstrates that he considered the combined effect of Herron's impairments, as the RFC accounted for Herron's physical and mental impairments.[5] **]**

Contrary to Herron's argument, the ALJ also did not disregard objective medical evidence.  In assessing RFC, the ALJ considered the entirety of the medical record, including the treatment records of both Dr. Uddin and Dr. Twilley, to which the ALJ assigned "significant weight."  The ALJ specifically mentioned several objective tests, such as Dr. Uddin's April 2010 x-rays and nerve conduction studies, and the clinical findings from Dr. Uddin's physical examination, including tender points and a straight leg raise test.  Dr. Twilley's testimony and treatment notes about his June 2010 x-rays are consistent with Dr. Uddin's x-ray results.  Dr. Twilley's nerve conduction studies, like those of Dr.

---

[5]To the extent Herron contends the ALJ should have considered the limiting effects of ankylosing spondylosis, the ALJ rejected Dr. Twilley's tentative diagnosis.  In any event, there was no evidence in the record that Herron was experiencing any limiting effects from ankylosing spondylosis that were distinct from the symptoms of her degenerative disc and joint disease.  See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of . . . impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard.").  Dr. Twilley's conclusory testimony that ankylosing spondylosis "is 100% disabling" was not entitled to any significant weight as it was not a "medical opinion" and addressed an issue reserved to the Commissioner.  See 20 C.F.R. § 416.927(d)(1).

Uddin, were normal.  The ALJ's RFC assessment was not required to account for every piece of evidence.  See Dyer, 395 F.3d at 1211.

Herron points to Dr. Twilley's testimony that Herron tested positive for HLA-B27, a protein found in the blood of people with ankylosing spondylitis. However, the Mayo Clinic, the source Herron cites for information about ankylosing spondylitis, states that there is no specific lab test to identify ankylosing spondylitis, the presence of HLA-B27 does not mean a person suffers from ankylosing spondylitis, and "most people who have the [HLA-B27] gene don't have ankylosing spondylitis."  See Diseases and Conditions, Ankylosing Spondylitis, http://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/basics/tests-diagnosis/con-20019766 (last visited March 18, 2016).  In other words, Herron's positive HLA-B27 test did not establish that she suffered from ankylosing spondylitis.  Given that Dr. Twilley's own treatment notes did not include a diagnosis (or even a mention) of ankylosing spondylitis after Herron tested positive for HLA-B27, we do not think the ALJ's failure to explicitly address this piece of evidence is reversible error.  See Cowart, 662 F.2d at 735 (requiring the ALJ to explain the weight given to only "obviously probative exhibits").

In sum, substantial evidence supports the ALJ's decisions to reject Dr. Twilley's ankylosing spondylitis diagnosis and partially discredit Herron's

testimony about the limiting effects of her pain.  Substantial evidence also supports the ALJ's determination that despite her physical impairments, Herron retained the RFC to perform light work with a sit/stand option.  For all these reasons, we affirm the ALJ's denial of Herron's application for SSI benefits.

**AFFIRMED.**